UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No.: Civ-07-cv-60695-JEM

| | |
|---|---|
| RICHARD FRESCO, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| R.L. POLK & CO. and ACXIOM CORP., | ) ) |
| Defendants. | ) |

**OBJECTION OF JACQUELINE PIO AND ANTHONY PIO
AND NOTICE OF INTENTION TO APPEAR**

NOW COMES Class members Jacqueline Pio, PO Box 810182, Boca Raton, FL 33481, tel. # (561) 945-2079, and Anthony Pio, 237 Saxony E., Apt. # A-202, Delray Beach FL 33446, tel. # (561) 265-7200, and object to the proposed settlement of this class action and the request for attorney's fees. Ms. Pio has held a Florida driver's license, number POOO-420-63-724-0, from 1988 through the present. Mr. Pio has held a Florida driver's license, number POOO-014-35-429-0 since at least 2000 through the present. Jacqueline and Anthony Pio intend to appear and argue at the fairness hearing scheduled for December 7, 2009 through their undersigned counsel. The Pios' counsel intends to speak about each of the following points at the hearing, and requests 10 minutes for oral argument. The Pios also reserve the right to cross-examine each of Class Counsel's witnesses presented in favor of the settlement or their fee request.

I.  **The Court May Not Certify the Class Under FRCP 23(b)(2).**

When filed, this was a case *primarily* for statutory damages of $2500 per violation, for Florida drivers. As such, monetary damages were hardly incidental to the illusory and redundant "injunctive" relief supposedly achieved by the proposed settlement – they were the *raison d'etre* and motivating factor of this entire lawsuit, without which the lawsuit is frivolous and makes no sense.

To certify a settlement class for the specific purpose of waiving the class' right to statutory or punitive damages and insulating the defendant from any class action seeking damages is an abuse of process and Rule 23(b)(2), which was designed for civil rights cases where the primary and in most cases only relief is injunctive. *See Cooper v. Southern Co.*, 390 F.3d 695, 721 (11th Cir. 2004)("The plaintiffs argue … that the district court could have certified a class under Rule 23(b)(2) only as to the injunctive and declaratory prayer for relief, thereby excluding altogether the damages issues from class certification. However, to the extent the named plaintiffs were willing to forego class certification on damages in order to pursue injunctive relief that consisted of an admonition to follow general principles of settled law, it is far from clear that the named plaintiffs would adequately represent the interests of the other putative class members."); *Crawford v. Equifax*, 201 F.3d 877, 882 (7th Cir. 2000) ("All that the settlement does is deprive class members of the right to file other lawsuits as class actions, something that the Seventh Circuit has held 'cuts [class members] off at the knees. They gain nothing, yet lose the right to the benefits of aggregation in a class.'").

> They gain nothing (the settlement does not include a concession of liability that would facilitate individual suits), but lose something: the possibility of any collective proceeding for damages. Because these are small-stakes cases, a class suit is the best, and perhaps only, way to proceed.

2

*Id.* at 880.

It is not as if other similar lawsuits have failed to obtain significant monetary relief. The *Kehoe* case settled for $50 million in cash, on behalf of a smaller class. *See Exhibit A*. This case started out as a class action on behalf of Florida licensed drivers only, whose personal information was obtained from the State of Florida during a time when Florida was not in compliance with the DPPA and did not obtain drivers' consent to sell their personal information. The same *was not true* for other states, severely undermining the viability of any claims drivers from other states could make.

This case could have been settled for a monetary amount on behalf of Florida drivers only. It was the unreasonable and unwarranted expansion of the class from the one alleged in the Complaint to one comprising the entire country that undermined any possibility the Florida drivers – including Jackie and Anthony Pio – had to obtain a reasonable monetary settlement. *Kehoe* refutes any argument Class Counsel may make that a monetary settlement was not achievable in this case, or that monetary damages are merely "incidental." Monetary damages were taken off the table by Class Counsel's and named plaintiffs self-interested and precipitous decision to sell the Defendants a nationwide release, at the expense of the Florida absent class members.

II.   **Both Named Plaintiffs and Class Counsel Are Inadequate Under FRCP 23(a).**

For the reasons just given, the Named Plaintiffs and their counsel are both inadequate, for agreeing to class certification under FRCP 23(b)(2), and for selling out the Florida class members by agreeing to an injunction-only settlement that waives Florida class members' claims for statutory damages, the only viable damages claims that they possess given the extreme difficulty of proving actual damages. "[T]o the extent

that the named plaintiffs were willing to forego class certification on damages in order to pursue injunctive relief that consisted of an admonition to follow general principles of settled law, it is far from clear that the named plaintiffs would adequately represent the interests of the other putative class members." *Cooper, supra*, 390 F. 3d at 721.

The Named Plaintiffs should have fought on behalf of the similarly situated Florida class members who were included in the class definition alleged in the Complaint, in order to achieve a monetary settlement similar to *Kehoe*. The Named Plaintiffs had absolutely no duty to drivers who reside in states other than Florida, and they breached their fiduciary duty to the similarly situated Florida drivers when they agreed to a sprawling, nationwide 23(b)(2) class and a settlement that provides nothing of value to anyone.

> The settlement is substantively very troubling. Crawford and his attorney were paid handsomely to go away; the other class members received nothing … and lost the right to pursue class relief. By agreeing to a class definition so broad that it included anyone who was sent a letter "similar" to the one he had received, Crawford consented to a class of approximately 214,000 members, which ensured that none could recover much… Blair and Wilson, by contrast, have been certified to represent smaller classes for which the cap could be as high as $250 per debtor… The fact that one class member receives $2000 and the other 200,000 + nothing is quite enough to demonstrate that the terms should not have been approved under Rule 23(e).

*Crawford v. Equifax*, 201 F.3d 877, 882 (7th Cir. 2000).

Class Counsel is inadequate under Rule 23(a) for the same reasons as the Named Plaintiffs, as well as for the additional reason that they once again negotiated a settlement that leaves money on the table that will revert to the Defendants, rather than securing it for the benefit of the Class. As this Court held in its January 20, 2009 Final Judgment and Order on Motion for Attorney's Fees and Costs in *Fresco v. Automotive Directions, Inc.*, No. 03-CIV-61063, attached hereto as *Exhibit B*, lodestar enhancements are

impermissible in class actions that settle without the creation of a monetary common fund.

> The Court notes that, although *Dague* was not a class-action case, the Supreme Court's reasoning for denying enhancements for contingency risks applies equally to class-action cases... Furthermore, the Eleventh Circuit has cited *Dague* in rejecting contingency enhancements in class-action cases, even those resolved by the settlement of the parties. *See Kenny A. ex rel. Winn v. Perdue*, 532 F.3d 1209, 1248 (11th Cir. 2008).

*Id.* at 19.

According to the docket, the Final Report of the Mediation reporting the settlement was filed on January 27, 2009. Therefore, Class Counsel had the benefit of this Court's holding in the prior settlement that they were limited to a fee of no more than their unenhanced lodestar at the time they reported this settlement to the Court. Class Counsel's claimed lodestar for the entire case, including this severed action against Acxiom and RL Polk, was $8.3 million as of November 2007. *Id.* at 17. This Court awarded Class Counsel that entire amount, plus some, as the fee award for the prior settlement. Therefore, Class Counsel may only claim as fees the additional time they spent working specifically on the Acxiom and RL Polk litigation and settlement from November 2007 through the present. There is no possible way that Class Counsel's lodestar for the past two years working on the Acxiom/Polk case (not including time spent defending the appeals of the first settlement) equals $7.5 million, the requested fees.

Class Counsel agreed to a settlement in which the amount that the Defendants agreed to pay to Class Counsel as fees exceeds the maximum permissible attorney's fee by several million dollars, thus guaranteeing that the Defendants will never part with a significant portion of the monetary relief they are clearly willing to pay to be rid of this litigation. Upon receiving this Court's fee award in the *Automotive Directions*

settlement, Class Counsel should have sought to treat the $7.5 million fee cap as the class' settlement fund, and requested a fee in the amount of their reasonable lodestar out of that fund, with the result that the remainder of the fund would be paid to the class or to a *cy pres* recipient that stands in the shoes of the class, rather than reverting to the Defendants. Class Counsel's failure to do so is a breach of fiduciary duty and renders them inadequate under Rule 23(a).

The amount of Class Counsel's fee request here, $7.5 million, may have funded a reasonable cash settlement of this action on behalf of Florida residents, the original plaintiffs. However, due to Class Counsel's avarice and Defendants' willing collusion in exchange for a nationwide release, a no-cash nationwide settlement was negotiated, and all of the cash to be paid as part of this settlement will go to the attorneys and the named plaintiffs. It is impossible to square the proposed result here with the vastly better one in *Kehoe*.

The injunctive relief is meaningless, and merely duplicates the requirements of the DPPA. Florida has now come into compliance with the DPPA, making the injunctive relief wholly redundant.

### III. Attorney's Fees May Be No More Than Class Counsel's Unenhanced Reasonable Lodestar.

Class Counsel argue that their fee request is justified by Rule 23(h)'s reference to "agreement of the parties." It is axiomatic, however, that a court has a duty to scrutinize attorney's fees regardless of their source, and regardless of whether they are to be paid separately by agreement of the defendant or taken from a common fund. *Dikeman v. Progressive Exp. Ins. Co.*, 2008 U.S. App. LEXIS 6768 (11th Cir. 2008). "A district court is not bound by an agreement of the parties with regard to fees… The court must

scrutinize the agreed-to fees ... and not merely ratify a pre-arranged compact." *Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 849 (5th Cir. 1998). *Accord, Rosenbaum v. Macallister*, 64 F.3d 1439, 1442 (10th Cir. 1995) (objector may appeal award of attorney's fees "even when the defendant agrees to the amount of the fees in the settlement agreement"); *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328-29 (9th Cir. 1999)(court's duty to scrutinize fee agreement exists independently of any objection). A court "is not bound by the agreement of the parties as to the amount of attorney's fees" and must not merely "ratify a pre-arranged compact." *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980).

If a court must scrutinize an agreed-upon fee, it must have some standard against which to measure the fee, independent of the agreement. Here, that standard is federal statutory fee-shifting jurisprudence. As the Ninth Circuit held in *Staton v. Boeing, supra*,

> The assumption in scrutinizing a class action settlement agreement must be, and always has been, that the members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high. If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have been obtained.

327 F.3d at 964.

As this Court held in its January 20, 2009 Final Judgment and Order on Motion for Attorney's Fees and Costs in the prior settlement, a reasonable fee for Class Counsel may be no more than Class Counsel's reasonable, unreimbursed lodestar related to their pursuit of this action and this settlement. In making that ruling, this Court was following the recent decision of the 11th Circuit in *Kenny A. ex rel. Winn v. Perdue*, 532 F.3d 1209, 1228 (11th Cir. 2008), which in turn was applying the Supreme Court's holding in *City of Burlington v. Dague*, 505 U.S. 557 (1992) to a class action settlement.

In light of the foregoing law of the case and governing case law, Class Counsel's request for $7.5 million in attorney's fees is grossly excessive and in violation of law.

In their Fee Memorandum submitted in connection with their previous fee application, Class Counsel stated that "a multiplier is necessary for establishing a reasonable fee," citing *Burlington v. Dague*, 505 U.S. 557 (1992). As this Court is well aware, the Eleventh Circuit held in *Kenny A.* that "enhancing a lodestar based on contingency is flatly forbidden by the *Dague* decision." 532 F.3d at 1228. Class Counsel could not have gotten it more wrong. Now, they are seeking a fee in flagrant disregard of the precedents of the Eleventh Circuit and this Court.

The fact that *Kenny A.* was decided before the current settlement was negotiated makes the argument the Pios made against the collusive fee agreement in the first settlement even more germane here. The Defendants knew, or should have known, about *Kenny A.* at the time they were negotiating the fee cap. This makes clear that the class' recovery was directly traded for the Defendants' agreement to pay excessive fees to Class Counsel. That Defendants were aware of *Kenny A.* means that they knew that their exposure for Class Counsel's fees was limited to Class Counsel's post-November 2007 lodestar. Therefore, there must have been some consideration for the Defendants' agreement to pay Class Counsel several times more than the Defendants could ever be legally obligated to pay. That consideration must have come in the form of diminished benefits to the Class, as the comparison with *Kehoe* case amply illustrates. *Kehoe* counsel received $10 million in fees, while their clients get $40 million. Here, Class Counsel have requested $7.5 million, while their clients will receive nothing. One need not have direct evidence of collusion to conclude that the parties struck a deal that enriches the attorneys and the Defendants at the expense of the Class members.

### IV. Pios' Attorney's Experience.

The Pios are represented by an attorney who has extensive experience in class action litigation, including significant recent experience in the Eleventh Circuit and this very Court, in cases that have had a direct effect on this litigation. First, a year before the Eleventh Circuit decided *Kenny A.*, attorney John Pentz argued on behalf of the Pios that Class Counsel's fee must be limited to their reasonable lodestar based upon the Supreme Court case of *City of Burlington v. Dague*. The *Dague* case was cited extensively in the Pios' objection to Class Counsel's $25 million fee request as well as in their Reply to Class Counsel's Response. Class Counsel's fee expert, Geoffrey Miller, failed to mention *Dague* in his Declaration, even to distinguish it, and Class Counsel argued in their Response that *Dague* applied only to RCRA actions, a position clearly rejected by the Eleventh Circuit in *Kenny A.*

While the Pios would like to take credit for persuading this Court to apply *Dague* to the fee award approved in the *Automotive Directions* case, it is likely that the Eleventh Circuit's decision in *Kenny A.* had more to do with it. Nevertheless, the Pios made almost precisely the same argument in their 2007 objections that the Eleventh Circuit adopted in *Kenny A.*, and therefore provided this Court with the benefit of an argument that it did not receive from any other participant at a time when the Eleventh Circuit had yet to weigh in on the issue. Therefore, the Pios feel that they and attorney Pentz provided a benefit both to the approval process and to the Class when they objected to the excessive fee request submitted by Class Counsel in connection with the prior

settlement.[1]  Attorney Pentz also provided assistance to this Court by cross-examining Class Counsel's fee experts at the November 2007 fairness hearing.

Attorney Pentz was also counsel for the successful appellant in *Dikeman v. Progressive Exp. Ins. Co.*, 2008 U.S. App. LEXIS 6768 (11th Cir. 2008), which this Court cited in its January 20, 2009 Final Judgment and Order on Motion for Attorney's Fees and Costs.  Attorney Pentz' clients in that case, Thomas and Marilyn Bell, were the only appellants to appeal the district court's attorney's fee award for its failure to place a value on the settlement and to give reasons for the amount of the award.  As a result, on remand, the district court issued a thoughtful and well-reasoned order that made clear that it did not accept class counsel's expert's wildly inflated valuation of the settlement, and that it was making an 11% fee award.  *See Exhibit C.*  Subsequently, at the district court's urging, Class Counsel in that case, James Hoyer Newcomer Smiljanich and Yanchunis, P.A., agreed to reimburse the Bells' counsel for his unenhanced lodestar spent successfully pursuing two separate objections and one appeal in that four-year settlement approval proceeding.

Objectors believe that the two cases described above provide a representative sample of their attorney's work and the impact his objections have had on two recent cases within the Eleventh Circuit, one of which was before this very Court.  To the extent that the notice requires an exhaustive recitation of every case in which their attorney represented a participant in a class action, the Pios object to that requirement as unduly burdensome and designed to discourage competent representation of objectors by competent, experienced counsel, as well as being irrelevant.

---

[1] The settlement was appealed to the Eleventh Circuit by several objectors, including the Pios, where it was resolved in a three-day confidential mediation through the Eleventh Circuit's Rule 33 appellate mediation program.  The lodestar fee award may have facilitated the appellate settlement in that case.

## CONCLUSION

For the foregoing reasons, this Court should deny approval to the proposed Settlement, and/or award Class Counsel no more than its reasonable, unenhanced lodestar, and require the difference between $7.5 million and Class Counsel's fee award to be paid to the Class or to an appropriate *cy pres* recipient on the Class' behalf.

We have read the foregoing objections and hereby adopt them and instruct our attorney John J. Pentz to file them.

_____ 10/5/09    _____ 10/4/09
Jacqueline Pio         Date       Anthony Pio          Date

Jacqueline Pio and Anthony Pio,
By their attorneys,

*/s/ John J. Pentz*
John J. Pentz, *pro hac vice*
Clasaxn@earthlink.net
2 Clock Tower Place, Suite 260G
Maynard, MA 01754
Ph: (978) 461-1548
Fax: (707) 276-2925

Nicolas J. Gutierrez, Jr.
NGutierrez@BGALaw.com
Borgognoni & Gutierrez, LLP      [Old Address]
Grand Bay Office Plaza, Suite 701
2665 South Bayshore Drive
Miami, FL 33133
Ph: (305) 860-2060
Fax: (305) 860-2068

---

program. The lodestar fee award may have facilitated the appellate settlement in that case.

11

## CONCLUSION

For the foregoing reasons, this Court should deny approval to the proposed Settlement, and/or award Class Counsel no more than its reasonable, unenhanced lodestar, and require the difference between $7.5 million and Class Counsel's fee award to be paid to the Class or to an appropriate *cy pres* recipient on the Class' behalf.

We have read the foregoing objections and hereby adopt them and instruct our attorney John J. Pentz to file them.

_____                      _____
Jacqueling Pio            Date                            Anthony Pio           Date

Jacqueline Pio and Anthony Pio,
By their attorneys,


/s/ John J. Pentz
John J. Pentz, *pro hac vice*
Clasaxn@earthlink.net
2 Clock Tower Place, Suite 260G
Maynard, MA 01754
Ph: (978) 461-1548
Fax: (707) 276-2925

/s/ Nicolas J. Gutierrez, Jr.
Nicolas J. Gutierrez, Jr.
Gutierrez & Zarraluqui, LLP          [New Address]
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Ph: (305) 397-2005

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on October 8, 2009 and was filed with the Clerk of Court using CM/ECF.

By: */s/ Nicolas J. Gutierrez*