UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-60695-Civ-Martinez/Brown

RICHARD FRESCO, CARLOS BARRETT, JEFFREY HY, MARY ANN COLLIER, ROY McGOLDRICK, ROBERT PINO, KENNETH W. HERETICK, RUSSELL V. ROSEN and JOEL LEVINE,

Plaintiffs,

vs.

R.L. POLK & CO., a Delaware corporation; and ACXIOM CORPORATION, a Delaware corporation,

Defendants.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL CERTIFICATION OF SETTLEMENT CLASS, FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND ENTRY OF FINAL JUDGMENT AND ORDER**

Plaintiffs, Richard Fresco, Carlos Barrett, Jeffrey Hy, Mary Ann Collier, Roy McGoldrick, Robert Pino, Kenneth Heretick, Russell V. Rosen and Joel Levine, individually and on behalf of all others similarly situated ("Named Plaintiffs" or "Class Representatives"), respectfully submit this Memorandum of Law in Support of their Motion for Final Approval of Class Action Settlement and Entry of Final Judgrnent and Order ("Memorandum"), in which they request that this Court enter an Order and Final Judgment (1) finally certifying the Settlement Class identified in the Settlement Agreement ("Settlement") executed by the Parties; and (2) granting final approval of the Parties' Settlement.[1] Support for this Memorandum is set forth below.

[1] Capitalized words in this memorandum refer to defined terms in the Settlement Agreement, and they have the same meaning as they do in the Settlement Agreement. Docket Entry ("DE") 82-1.

## I. Introduction

On June 15, 2009, this Court preliminarily approved the Parties' Settlement after more than six years of contentious litigation. DE 90. This case stems from a class action complaint that Named Plaintiffs filed against several defendants including R.L. Polk & Co. and Acxiom Corp. ("Defendants") in April 2003, styled *Fresco, et al. v. Automotive Directions, et al.*, Case No. 03-cv-61063-JEM ("Fresco I"). Fresco I DE 45 (First Amended Complaint). Named Plaintiffs claims were against several major corporations active in the information service provider industry. Named Plaintiffs alleged that Defendants and the other companies violated and were continuing to violate the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721-2725, which regulates the obtainment, use, and disclosure of "Personal Information" and "Highly Restricted Personal Information"[2] from motor vehicle and driver's license records maintained by state departments of motor vehicles ("DMV"). *Id.*

After four years of litigation, including many lengthy, adversarial mediation sessions, Named Plaintiffs reached a settlement with six defendants in Fresco I that secured precedent-setting, injunctive relief for much of the industry. Fresco I DE 413-1 (Settlement Agreement). Although Polk and Acxiom participated in nearly all of the mediation sessions in Fresco I, at the end of the Fresco I mediation, Named Plaintiffs and Defendants reached an impasse as Defendants refused to agree to the settlement with their co-defendants.

As a result, the Parties asked this Court to sever Named Plaintiffs' claims against Polk and Acxiom – a motion that the court granted on May 14, 2007. Fresco I DE 480 (Omnibus Order).

[2] As those terms are defined in the DPPA.

Thereafter, the Parties began litigating anew with multiple rounds of discovery requests, depositions, and motion practice.

At the same time, in Fresco I, this Court entered a Final Judgment that approved the Fresco I settlement and certified a nationwide class. Fresco I DE 629. This Court found that the Fresco I settlement and the Fresco I settlement class met all the prerequisites of Rule 23. *Id.* In the instant Settlement, the product of adversarial litigation and the substantial efforts of an experienced mediator appointed by this Court, Named Plaintiffs have secured identical Injunctive Relief for a virtually identical Settlement Class against the final two major corporations active in the information service provider industry.

This Injunctive Relief has garnered nearly universal support. To date, only a handful of the more than 200,000,000 Settlement Class Members have sought to object to the Settlement.[3] Importantly, **no** state or federal governmental authority filed objections to the Settlement.[4] Indeed, this Settlement, like the Fresco I settlement before it, has been supported by privacy experts and other experts from around the country.[5] This Court has already determined that the Settlement's Injunctive Relief is "multi-faceted and will benefit all settlement class members by enhancing the protection afforded their DPPA-regulated information." DE 90 at 9.

---

[3] Class Representatives' responses to the few arguments raised by objectors are being filed concurrently in a separate memorandum.

[4] No objection to the Settlement Agreement was filed by any representative of the U.S. Department of Justice, any State Attorney General, or any director of any of the fifty (50) state departments of motor vehicles.

[5] *See* Declarations of Dr. Larry Ponemon, PhD; Professor Linda Mullenix; Professor Daniel Solove; Professor Theodore Eisenberg; Steven Schwartz; and Ervin Gonzalez.

As such, this Settlement should be approved and the Class certified consistent with this Court's findings in Fresco I, the supportive opinions of multiple experts, and the litany of arguments presented below.

## II. THE SETTLEMENT CLASS SHOULD BE CERTIFIED

The Settlement Class to be certified is the one the Court conditionally certified and that the Class Representatives and Defendants defined in the Settlement. The Settlement Class is estimated to number more than 200,000,000 persons nationwide and consists of "all persons whose Personal Information or Highly Restricted Personal Information was obtained, used, or disclosed by any of the Settling Defendants from April 1, 1998 through Final Judgment." DE 82-1 § II.KK; DE 90 at 4.

This Litigation was settled prior to class certification. A class may be certified "solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue."[6]

> Regardless of whether a class is certified for settlement or for trial, the Court must find the [] prerequisites [for class certification under Rule 23(a)] are met: [namely, whether] "(1) the class is so numerous that joinder of all members is impracticable ['numerosity'], (2) there are questions of law or fact common to the class ['commonality'], (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ['typicality'], and (4) the representative parties will fairly and adequately protect the interests of the class ['adequacy of representation']."

*Lipuma v. Am Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (quoting FED. R. CIV. P. 23(a)). "The proposed class must also meet the requirements of one of the three class types found in

[6] *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (citation omitted); *see also In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 173-78 (5th Cir. 1979).

Rule 23(b)."[7] In addition, the Court must find that the class action settlement is "fair, adequate and reasonable" and not the product of collusion.[8]

Defendants agreed to the certification of the Settlement Class, and this Court has preliminarily certified the Settlement Class pursuant to Rule 23(b)(2). DE 82-1; DE 90. Further, this Court found that the identical Fresco I settlement class met all the prerequisites for a class action under Rule 23. Fresco I DE 629 at ¶ 4, 10; *see also* Mullenix Decl. at ¶ 57. As expanded upon below, it is clear that this Settlement Class easily meets the requirements of Rule 23(a) and should be certified for settlement purposes.

### A. NUMEROSITY IS SATISFIED

The Settlement Class satisfies Rule 23(a)(1), which requires that a class be so numerous that joinder of all class members would be impracticable. Mullenix Decl. at ¶ 54. The Eleventh Circuit has held that while there is no fixed rule regarding numerosity "generally less than twenty-one is inadequate, more than forty adequate, with numbers in between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).[9] The proper focus, however, is not on numbers alone but on "whether joinder of all members is practicable in view of the numerosity of the class and all other factors." *Holland v. Steele*, 92 F.R.D. 58, 63 (N.D. Ga. 1981). Here, the more than 200 million Settlement Class Members are dispersed throughout the United

---

[7] *Id.* at 1314; *accord Ass'n for Disabled Ams. Inc., v.Amoco Oil Co.*, 211 F.R.D. 457 (S.D. Fla. 2002) and *Amchem Products v. Windsor*, 21 U.S. 591, 614 (1997).

[8] *Amoco,* 211 F.R.D. at 466 (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)); a*ccord Cotton v. Hinton*, 559 F. 2d 1326 (5th Cir. 1977) and *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988).

[9] *See, also, Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 599 (S.D. Fla. 1991) (certifying a class of approximately 130 investors, and noting that the numerosity requirement is satisfied with as few as 25 or 30 members).

States. DE 90 at 4. The astronomical size of the Settlement Class, as well as its geographic dispersion across the nation, easily satisfies the numerosity requirement of Rule 23(a)(1) as joinder is not only impracticable, but also impossible.

**B. COMMONALITY AND TYPICALITY ARE SATISFIED**

The second requirement of Rule 23(a), commonality, requires an assessment of whether the plaintiffs' claims raise **at least one** question of law or fact common to the members of the Class. Commonality will be satisfied where questions of law refer to standardized conduct by the defendants toward members of the proposed class. *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 428 (S.D. Fla. 1991). Establishing commonality does not require complete identity of the plaintiffs' claims. *CV Reiz, Inc., v. Levy,* 144 F.R.D. 690, 696 (S.D. Fla. 1992). In fact, "it is not necessary that all questions of fact or law be common, but only that some questions are common…" *Klay v. Humana, Inc.,* 382 F.3d 1241, 1254 (11th Cir. 2004), *cert. denied*, 543 U.S. 1081 (2005). Any factual distinctions that may exist are "far less important than the common issues bearing on the existence of a 'common scheme' of misrepresentations and omissions." *Tapken v. Brown,* No. 90-691-CIV-MARCUS, 1992 WL 178984, at *59 (S.D. Fla. Mar. 13, 1992).

In this case, the Class Members are commonly united in their legal claim of alleged violations of the DPPA based on alleged impermissible obtainment, use, and disclosure of personal information from state motor vehicle and driver's license records by Defendants. *See* DE 35; Mullenix Decl. at ¶ 63. All members of the Settlement Class are protected by the DPPA and DPPA

State Equivalents,[10] and share a common legal remedy: substantive injunctive relief and compliance with the DPPA.[11]

Settlement Class Members also share a common factual basis for their legal claims: all Settlement Class Members have provided personal information to their respective state DMV to receive a driver's license or motor vehicle registration. Mullenix Decl. at ¶ 64. The Court found that "at a minimum, Defendants obtained the class members' DPPA-regulated information originating from state DMV records, and used or made some of that information available for use or disclosure." DE 90 at 4. Consequently, there is certainly "at least one" issue affecting all of the proposed Settlement Class Members – in fact, each Settlement Class Member is advancing the same claim based on the same factual basis. Therefore, there is ample legal and factual cohesiveness among Settlement Class Members to satisfy the commonality requirement of Rule 23(a)(2). Mullenix Decl. at ¶ 65.

As for typicality, the Eleventh Circuit has held that the requirement is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent, and are based on the same legal or remedial theory. *See Appleyard v. Wallace*, 754 F. 2d 955, 958 (11th Cir. 1985). Like commonality, "[t]ypicality… does not require identical claims or defenses." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F. 2d 1332, 1337 (11th Cir. 1984), *cert. denied*, 470 U.S. 1004 (1985). There need not be an absolute identity between the factual predicate for the class representative's claims and those of class members. *Id.* "[A] strong similarity of legal theories will satisfy the typicality requirement despite substantial factual

---

[10] The DPPA, however has primacy with respect to DPPA Regulated Information.

[11] DE 35 ¶¶32-38; DE 82-1; *see* 18 U.S.C. § 2724(b) (court may award equitable relief for DPPA violations).

differences." *Appleyard* 754 F.2d at 1337. The test for typicality is not demanding. *See Shipes v. Trinity Industries*, 987 F.2d 311, 316 (5th Cir. 1993), *cert. denied,* 510 U.S. 991 (1993). Courts simply require that there be a nexus between the facts, claims, and remedies that the class representative seeks, with those of the class members.

In this case, the Third Amended Complaint alleges a nationwide class action under the DPPA. DE 35 at ¶12. Each Class Representative and each of the Settlement Class Members furnished personal information to a state DMV which was obtained and made available for use or disclosure by Defendants. DE 90 at 4. The DPPA provides permissible purposes for obtaining, using, and disclosing DPPA Regulated Information, and Class Representatives allege that Defendants obtained, used, or disclosed their protected information in violation of the DPPA as to them and the Settlement Class Members alike. DE 35 at 8-14. The DPPA and those corresponding DPPA-regulated purposes apply equally in every U.S. State and Territory. Thus, each Class Representative and Settlement Class Member has grievances centered on the same alleged violations of the DPPA arising from Defendants' allegedly impermissible obtainment, use, or disclosure of the Settlement Class Members' DPPA-regulated information. DE 90 at 3; Mullenix Decl. at ¶ 68. Accordingly, there is a readily demonstrable nexus between the facts, claims, and the remedies to satisfy the typicality requirement. *Id.* This Court has already found that "there is a sufficient link for purposes of a settlement class…because Defendants obtained the class members' DPPA-regulated information…and used or made some of that information available for use or disclosure. DE 90 at 4. Therefore, typicality under Rule 23(a)(3) is easily met.

### C. Adequacy of Representation is Satisfied

The final prerequisite of Rule 23(a) requires a showing that the representative parties will fairly and adequately protect the interests of the class. What constitutes adequate representation is a

question of fact that depends upon the circumstances of each case and is entrusted to the discretion of the trial court.[12] The adequacy requirement of Rule 23(a)(4) encompasses two requirements: (1) the proposed representatives have interests in common with, and not antagonistic to, the interests of the class; and (2) plaintiffs' attorneys are qualified, experienced and generally able to conduct the litigation. *Kirkpatrick,* 827 F.2d at 726. Conflicts of interest do not exist merely because a proposed injunctive relief program does not embrace every possible variant in a class. *Amoco*, 211 F.R.D. at 464.

**1. Class Representatives are clearly adequate.**

The Class Representatives satisfy the adequacy standards. Mullenix Decl. at ¶ 78. Here, Class Representatives attest that they have no conflicts of interest with absent Settlement Class Members and have fulfilled their fiduciary duties.[13] As this Court found, "[e]ach settlement class member will benefit from the injunctive relief" and the "Named Plaintiffs have no interests…that are adverse or antagonistic to the interests of the settlement class." DE 90 at 5.

Under the Settlement, the Class Representatives and Settlement Class Members all equally enjoy the benefits of the substantial Injunctive Relief. That the Settlement does not provide for an award of damages should give this Court little pause as courts have often approved settlements limited to injunctive relief where class members did not receive monetary compensation.[14] Indeed,

---

[12] *See* 7A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1765, at 271 (1986); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987).

[13] *See* Declaration of Richard Fresco; Declaration of Carlos Barrett; Declaration of Jeffrey Hy; Declaration of Mary Ann Collier; Declaration of Roy McGoldrick; Declaration of Robert Pino; Affidavit of Kenneth Heretick; Affidavit of Russell V. Rosen; and Declaration of Joel Levine. (All filed concurrently with this Memorandum).

[14] *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (approving settlement that "obligates Chrysler to make the minivans safe" but awards no cash compensation); *Jones v. Amalgamated*

the Settlement expressly preserves the right of any Settlement Class Member to file an individual lawsuit under the DPPA (or a DPPA State Equivalent) for actual and punitive damages. DE 82-1 § IX.C. Therefore, Class Representatives are not in an antagonistic position to any Settlement Class Member since the Injunctive Relief benefits everyone equally and the Settlement Class Members have had their individual right to sue for actual and punitive damages preserved.

Further, the incentive awards secured for the Class Representatives did not place them in an adverse position with the Settlement Class. The issue of incentive awards was not discussed until **after** the substantial Injunctive Relief to the Settlement Class was fully agreed-to.[15] If this Court approves the incentive awards, the Settlement Class would experience no reduction in their Settlement benefits since the incentive awards are wholly independent of the Injunctive Relief. DE 82-1 at § VII.A.; *see Brame v. Ray Bills Fin. Corp.*, 85 F.R.D. 568, 583 (N.D. N.Y. 1979) (no antagonism when recovery "being sought by the named plaintiffs would [not] have operated to reduce the amount that the remaining class members could receive.").

Importantly, Class Representatives have more than earned their incentive awards during their more than six (6) years of work for the Settlement Class in bringing about substantial, nationwide Injunctive Relief.[16] "Courts routinely approve incentive awards to compensate named plaintiffs for services they provided and the risks they incurred during the course of the class action litigation." *In*

---

*Warbasse Houses, Inc.*, 721 F.2d 881, 885 (2d Cir. 1983) (affirming approval of settlement providing "only injunctive relief"); *Yang Soon Oh v. AT&T Corp.* 225 F.R.D. 142, 149 (D. N.J. 2004) (injunctive-only relief benefiting both class members and non-class members was sufficient consideration to support settlement).

[15] *See* Declaration of James Chaplin at ¶¶ 10-11; Joint Declaration of Tod Aronovitz and John Yanchunis at ¶ 18 ("Joint Decl.").

[16] DE 82-1 at §§ II.A., VII.A; Mullenix Decl. at ¶ 84.

*re Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) (gathering cases), *reversed on other grounds*, 24 Fed. Appx. 520 (6th Cir. 2001).[17]

Here, Class Representatives actively participated in the Litigation from its inception through the Settlement. Class Counsel discussed with the Class Representatives their duty to advocate on behalf of the Class's interests ahead of their own self-interests.[18] Each Class Representative has attested that his or her involvement was not for the purpose of making money, but rather for the purpose of changing the behavior of the Defendants.[19] From the outset of the Litigation to the time the incentive awards were mediated, Class Representatives were not promised any financial benefit or payment in return for representing the class.[20] The primary goal of the Class Representatives has

---

[17] *See, e.g., White v. Nat'l Football League*, 41 F.3d 402, 408 (8th Cir. 1994); *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995); *In regarding Domestic Air Transportation Antirust Litig.*, 148 F.R.D. 297, 358 (N.D. Ga. 1993); *Enter. Energy Corp. v. Columbia Gas Transmission, Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991); *In regarding Dun & Bradstreet Credit Serv. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990); *Huguley v. Gen. Motors Corp.*, 128 F.R.D. 81, 85 (E.D. Mich. 1989), *aff'd*, 925 F. 2d 1464 (6th Cir.), *cert. denied*, 502 U.S. 909 (1991); *In regarding Immuniex Sec. Litig.*, 864 F. Supp. 142 (W.D. Wash.); *In regarding Marine Midland Motor Vehicle Leasing Litig.*, 155 F.R.D. 416, 424 (W.D. N.Y. 1994); *Spicer v. Chicago Board Options Exchange, Inc.*, 844 F. Supp. 1226, 1266 (N.D. Ill. 1993); *Golden v. Schulman*, CCH Fed. Sec. L. Rep. 94,060, at p. 90,954 (E.D. N.Y. 1988); *In regarding GNC S'holder Litig.: All Actions*, 668 F. Supp. 450, 451 (W.D. Pa. 1987); *Trancelliti v. Minolta Corp.*, 666 F. Supp. 750, 752 (D. Md. 1987); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *Highsmith v. Chrysler*, No. 92 C. 0475 (N.D. Ill. 1995); *Kanzanas v. Millcom, Inc.*, CCH Fed. Sec. L. Rptr. 97,255 (S.D. N.Y. 1992); *Luevano v. Campbell*, 93 F.R.D. 616 (W.D. Pa. 1973), *aff'd*, 497 F. 2d 799 (3d Cir.), *cert. denied, sub. Nom. Abate v. Pittsburg Plate Glass Company*, 419 U.S. 900 (1974); *see also* JOCELYN D. LARKIN, INCENTIVE AWARDS TO CLASS REPRESENTATIVES IN CLASS ACTION SETTLEMENTS, available at http://impactfund.org.whsites.net/documents/ cat_117-126/Incentive_Awards_to_Class_Representatives_in_Class_Action_Settlements.pdf ("As part of many class action settlements, the named plaintiffs receive an incentive award or "bonus," as for having performed services of a class representative.").

[18] *E.g.* Joint Decl. at ¶ 13; Barrett Decl. at ¶ 11; Collier Decl. at ¶ 6; Heretick Aff. at ¶¶ 15, 17; Levine Decl. at ¶ 10; McGoldrick Decl. at ¶ 6; Pino Decl. at ¶ 2.

[19] *Id.*

[20] *E.g.*, Heretick Aff. at ¶ 19; McGoldrick Decl. at ¶ 6; Fresco Decl. at ¶ 10; Rosen Aff. at ¶¶ 17-18.

always been to secure enhanced privacy protection of the personal information that individuals provide to state DMVs and they have accomplished this goal through the Settlement.[21]

Moreover, Class Counsel involved the Class Representatives in decisions relating to formulation of legal theories and the class definition, as well as the difficulties and risks involved with aspects of the Litigation.[22] Class Representatives reviewed relevant documents and participated in the discovery process.[23] Class Counsel apprised the Class Representatives of the settlement negotiations during the Fresco I mediation, the break-down in the Fresco I negotiations, and the subsequent renewal of negotiations that occurred in this Litigation.[24] Class Counsel and Class Representatives reviewed and discussed the Settlement; the nature and scope of the Injunctive Relief; the consequences of the general release; the class action waiver; and the preservation of actual and punitive damages in subsequent individual litigation.[25] Class Representatives attest that they believe the terms of the Settlement benefit the entire Class, and not just themselves.[26] In light of these facts, the adequacy of the Class Representatives required under Rule 23(a)(4) is readily satisfied.

---

[21] Barrett Decl. at ¶ 11; Collier Decl. at ¶ 6; Heretick Aff. at ¶¶ 15, 17; Levine Decl. at ¶ 10; McGoldrick Decl. at ¶ 6; Pino Decl. at ¶ 2..

[22] *E.g.*, Barrett Decl. at ¶¶ 9-10; Collier Decl. at ¶ 7; Heretick Aff. at ¶¶ 13-16; Hy Decl. at ¶¶ 7-8; Levine Decl. at ¶ 9; McGoldrick Decl. at ¶ 7; Pino Decl. at ¶ 7

[23] Fresco Decl. at ¶ 4; Collier Decl. at ¶ 5; Pino Decl. at ¶ 6; McGoldrick Decl. at ¶¶ 3-4; Barrett Decl. at ¶ 5; Hy Decl. at ¶ 3; Levine Decl. at ¶¶ 7-9; Rosen Aff. at ¶¶ 11-13; Heretick Aff. at ¶¶ 8-9.

[24] Joint Decl. at ¶¶ 3, 13; Barrett Decl. at ¶¶ 9-10; Collier Decl. at ¶ 7; Heretick Aff. at ¶¶ 13-16; Hy Decl. at ¶¶ 7-8; Levine Decl. at ¶ 9; McGoldrick Decl. at ¶ 7; Pino Decl. at ¶ 7.

[25] *Id.*

[26] *E.g.* Collier Decl. at ¶ 6; Fresco Decl. at ¶ 9; Heretick Aff. at ¶ 15; Hy Decl. at ¶ 8; McGoldrick Decl. at ¶ 7; Barrett Decl. at ¶ 9; and Pino Decl. at ¶ 7.

**2. Class Counsel are Clearly Adequate**

Substantial evidence indicates that Class Counsel are adequate. Mullenix Decl. at ¶¶ 97-122. This Court found that the Named Plaintiffs and Defendants reached a settlement only after the case was litigated for more than five years and the parties "engaged in substantial discovery" and "[v]igorous and contentious motion practice" including "plaintiffs' motions to compel discovery, Defendants' joint motion to preclude evidence, Defendants' motion for summary judgment, and, most recently, Defendants' motion for judgment on the pleadings." DE 90 at 12. This finding is supported by the record.[27] Evidence of Class Counsel's adequacy is manifested by Class Counsel's credentials; continuing legal and factual investigation; extensive document and deposition discovery; persistence in novel legal theories; and acceptance of risks in an untested legal environment.[28]

Named Plaintiffs retained Class Counsel, whom this Court observed "have experience in class actions and complex litigation." DE 90 at 5. Indeed, Class Counsel have significant experience in complex commercial or class litigation, and have extensive knowledge of the law applicable to Settlement Class Members' claims.[29] Collectively, Class Counsel have advocated dozens of complex and class action cases in state and federal courts on a nationwide basis for decades, including cases before this Court – most pertinent to the instant action is the recently finally-approved Fresco I.[30]

---

[27] *See e.g.* Aronovitz Decl at ¶¶ 10-11, 20-28; Chaplin Decl. at ¶¶ 16-17; Yanchunis Decl. at ¶¶ 20-25.

[28] *Id.*; *see also* Portley Decl. at ¶ 2; Welch Decl. at ¶¶ 2-4, 6, and 8; Sales Decl. at ¶¶ 18-29; Green Decl. at ¶ 11.

[29] *See e.g.*, Welch Decl at ¶¶ 2-3; Sales Decl. at ¶¶ 2-3; Green Decl. at ¶ 5; Goodman Decl. at ¶ 3.

[30] *Id.*

Class Counsel have further demonstrated their ability to conduct a "vigorous prosecution" by committing the resources necessary to investigate and pursue the claims of absent Settlement Class Members and to protect their interests. DE 90 at 5. In formulating and refining the class claims, Class Counsel retained Professor Fred Cate, a nationally prominent expert on privacy issues, in Fresco I. Fresco I DE 554-2 (Cate Declaration). In this Litigation, Class Counsel retained two more nationally recognized privacy experts, Dr. Larry Ponemon, Ph.D, and Professor Daniel Solove to assist Class Counsel. Ponemon Decl.; Solove Decl. Throughout both actions, Class Counsel dedicated a full-time certified forensic fraud investigator to examine and investigate all matters relating to the case. *See* Joint Decl. at ¶ 1.

Over the course of this Litigation, Class Counsel also engaged in extensive formal and informal discovery. Prior to the severance order on May 14, 2007, Class Counsel deposed numerous corporate representatives across the country; defended the depositions of all nine (9) Class Representatives; formulated and answered numerous interrogatories and requests for production; and pursued appellate litigation of DPPA issues to the Eleventh Circuit.[31] After the severance, Class Counsel formulated and served over 400 requests for admission as well as several detailed requests for production. DE 45; Joint Decl. at ¶ 7. In addition, Class Counsel engaged in contentious motion practice, including two dispositive motions for judgment on the pleadings. DE 48-50. In addition, Class Counsel prepared for and deposed a total of ten (10) corporate representatives in week-long trips to Michigan and Arkansas. Joint Decl. at ¶¶ 7-8.

Both mediators that have observed the negotiations between Class Counsel and Defendants have sworn that the negotiations were conducted as adversaries, and that there was no evidence of

[31] Joint Decl. at ¶ 6; Portley Decl. at ¶ 2; Welch Decl. at ¶¶ 6 and 8; Sales Decl. at ¶¶ 18-29; Green Decl. at ¶ 11; Goodman Decl. at ¶¶ 6-10; Perwin Decl. at ¶¶ 8-13.

collusion.[32] Class Counsel's adequacy is further demonstrated by the substantial Injunctive Relief that "will lead to important and substantial improvements in privacy protections to the lasting benefit of over 200 million Americans, and will substantially reduce the risk of future misuse of DPPA regulated data." Ponemon Decl. ¶ 17. Class Counsel also secured an extensive Notice Program (discussed *infra* as well as in a concurrently filed brief) to ensure that the Settlement Class Members' were apprised of their rights to pursue individual actual and punitive damage claims under federal and state DPPA statutes.[33]

Finally, Class Counsel acted competently and responsibly in negotiating incentive awards for the Class Representatives only **after** Defendants agreed to the settlement terms of the Injunctive Relief program. Mullenix Decl. at ¶ 120; Chaplin Decl. at ¶¶ 9-11. Further, Class Counsel acted competently and responsibly in negotiating legal fees and costs only **after** Defendants agreed to incentive awards for the Class Representatives. Mullenix Decl. at ¶ 119; Chaplin Decl. at ¶ 12.

Based on the foregoing, Class Counsel satisfy the "adequacy of representation" requirement under Rule 23(a)(4), and the final requirement of Rule 23(a) is met. Mullenix Decl. at ¶ 97-122.

### D. Class Certification under Rule 23(b)(2) is Appropriate

The Parties have requested that the Court finally approve the Settlement under Rule 23(b)(2). Plaintiffs seeking class certification under Rule 23(b)(2) must show that defendants have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief . . . with respect to the class as a whole." FED. R. CIV. P. 23(b)(2). Under Rule

---

[32] Max Decl. at ¶ 14; Chaplin Decl. at ¶¶ 16-17; DE 90 at 10.

[33] DE 82-3 at ¶ 21; Affidavit of Jeanne Finegan at ¶ 7 (attached to Plaintiffs' Brief in Support of Adequacy of Notice Program); DE 90 at 15; Mullenix Decl. at ¶ 126.

23(b)(2), any request for monetary relief must be "incidental" to the injunctive relief. *See, Murray v. Auslander*, 244 F.3d 807 (11th Cir. 2001). Under class-action jurisprudence, Rule 23(b)(2) classes are mandatory[34] – thus providing no opt-out rights.[35] Citing Rule 23(b)(2), *Murray*, and *Amoco*, this Court found certification under Rule 23(b)(2) justified in this case because:

> Defendants have acted on grounds generally applicable to the settlement class as a whole by obtaining the settlement class members' DPPA-regulated information originating from state DMV records, and using or making some of that information available for use or disclosure. The Court determines that the release of statutory liquidated damages claims in the proposed settlement is incidental to the injunctive relief provided by the settlement. Any claims that the settlement class members may have for actual damages are preserved by the settlement and thus do not preclude certification under Rule 23(b)(2).

DE 90 at 6.

Quoting *Allison v. Citgo Petroleum Corp*., 151 F.3d 402, 415 (5th Cir. 1998), the Eleventh Circuit in *Murray* determined damages were "incidental" in the context of (b)(2) when the damages:

> [F]low directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief…. Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established…. Liability for incidental damages should not … entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions.

---

[34] There are very good reasons for not allowing opt-out rights for (b)(2) classes. *See Kincade v. Gen. Tire & Rubber Co*., 635 F.2d 501, 506-508 (5th Cir. 1981) ("[A]llowing objectors to opt out [of a 23(b)(2) class] would discourage settlements because class action defendants would not be inclined to settle where the result would likely be a settlement applicable only to class members with questionable claims, with those having stronger claims opting out to pursue their individual claims separately."); *Pettway v. Am. Cast Iron Pipe Co*., 576 F.2d 1157, 1220 (5th Cir. 1978), *cert. den.*, 439 U.S. 1115 (1979). "[A]ll members of the class are bound equally by the adjudication or settlement of such actions, even though individual members of the class may oppose either the conduct of the litigation or some aspect of a proposed settlement." *Warren v. Tampa*, 693 F. Supp. 1051, 1062 (M.D. Fla. 1988) (citation omitted). "This feature prevents repetitious litigation over a single policy or event that may affect many individuals, and by the need to avoid conflicting remedial orders arising from the prosecution of multiple actions." *Warren* 693 F.Supp at 1062 (citing *Luevano*, 93 F.R.D. at 86).

[35] FED. R. CIV. P. 23(b)(2); *see also Amoco*, 211 F.R.D. at 466; Mullenix Decl. at ¶ 123.

*Murray*, 244 F.3d at 812.

This Court's preliminary approval of the Rule 23(b)(2) Settlement Class is entirely consistent with *Amoco*, the Eleventh Circuit's Court's decision in *Murray*, Rule 23(b)(2), and judicial construction of the DPPA's remedial provisions. For the purposes of Rule 23(b)(2) settlements, this Court has found statutory damages may be incidental to injunctive relief sought to enforce the federal statute. *See, e.g., Amoco,* 211 F.R.D. at 465 (applying *Murray*). Further supporting the incidental nature of the statutory liquidated damages is the fact that under the DPPA the damages flow directly from a violation of the act.[36] Hence under the cited caselaw, the DPPA statutory damages that are being released are "incidental" to the Injunctive Relief in the Settlement sought here. Mullenix Decl. at ¶ 130.

Importantly, as in *Amoco*, this Litigation has always centered on the alleged violations and need for the enforcement of a federal statute rather than seeking money damages.[37] The DPPA regulates the statutorily permissible purposes for obtaining, using, and disclosing personal information acquired from motor vehicle records maintained by state DMVs. The DPPA and corresponding DPPA-regulated purposes apply equally in every state and territory subject to federal law. In preliminarily approving the Settlement, the Court determined that "Defendants obtained settlement class members' DPPA-regulated information originating from state DMV records, and made that information available for use or disclosure." DE 90 at 5. Thus, the Settlement Class is defined homogeneously as "[a]ll persons whose Personal Information or Highly Restricted Personal

---

[36] *See Kehoe v. Fid. Fed. Bank & Trust*, 421 F.3d 1209, 1213 (11th Cir. 2005), *cert. denied*, 547 U.S. 1051 (2006); *see also Parus v. Kroeplin*, 2006 U.S. Dist. LEXIS 4157 (D. Wis. 2006) and *Pichler v. UNITE*, 228 F.R.D. 230, 247 (E.D. Pa. 2005).

[37] DE 35 at 12-14; Joint Decl. at ¶¶ 12-18; Mullenix Decl. at ¶¶ 127, 130; *see, e.g.,* Declarations in Fresco I of Collier at ¶¶ 2-3; Fresco at ¶¶2-3, 5, 8-9; Heretick at ¶¶ 3, 14; Hy at ¶¶ 2, 8; Pino at ¶¶2-3, 7-9.

Information was obtained, used, or disclosed by either of the Defendants from April 1, 1998 through final approval of the Settlement Agreement." DE 82-1 § IV.A.

Under these circumstances, it's clear that Named Plaintiffs' central allegation was that Defendants acted in a consistent manner toward all members of the Settlement Class and Class Representatives alike, by systematically violating the DPPA over a long period of time. DE 35 at 3; DE 90 at 4. Evidencing the primacy of the Injunctive Relief, Class Representatives in the Settlement Agreement do not seek damages for Named Plaintiffs or Settlement Class Members. *See* DE 82-1. Rather, the heart of the Settlement Agreement is the Injunctive Relief, which experts have opined provides substantial, nationwide benefits to Named Plaintiffs and Settlement Class Members to ensure that their privacy interests are protected and that Defendants' comply with the DPPA.[38]

Class certification under Rule 23(b)(2) is further called for here because it is the most sensible and effective way of protecting broad interests like privacy and the proper treatment of Settlement Class Members' personal information under the DPPA. Defendants are "information service providers" whose businesses involve the systematic collection, comparison, and storage of bits of sometimes personal information in huge databases. *See* Solove Decl at ¶ VI.A. They serve private and government clients throughout the United States. *Id.* Given the nature of Defendants' database businesses and the purpose of (b)(2) certification, the most effective and practical way to resolve this complex case is through nationwide injunctive relief.[39] With respect to each

[38] Solove Decl. at ¶ II.7.; Ponemon Decl. at ¶¶ 16-17; Mullenix Decl. at ¶ 36; Cate Decl. at ¶¶ 2.

[39] *See Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 252-53 (3d Cir. 1975) (stating that allowing a (b)(2) class members to opt out of a potential judgment would "permit the institution of separate litigation and would defeat the fundamental objective of (b)(2), to bind the members of the class with one conclusive adjudication."); *see also Amoco*, 211 F.R.D. at 473 ("the purpose of Rule 23(b)(2) . . .is to finally resolve class disputes.") (citation omitted).

Defendant's database business, the proposed Rule 23(b)(2) injunctive relief under the Settlement Agreement exacts company-wide, systemic changes to each Defendant's generally applicable data practices, procedures, and databases.[40] Clearly this is a case in which class certification under Rule 23(b)(2) is warranted.

## III. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

It is well settled that judicial policy favors voluntary settlement for resolution of class-actions.[41] "Settlement has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice. . . ." *Behrens*, 118 F.R.D. at 538. "Litigants should be encouraged to determine their respective rights between themselves." *Id.* (quoting *Cotton* 559 F.2d at 1331) (citation omitted). "Moreover, where, as here, the [settlement] previously has been preliminarily approved, the [settlement] is 'presumptively reasonable.'" *Amoco*, 211 F.R.D. at 467 (citations omitted).

### A. The Settlement Exceeds the Standards for Judicial Approval

To approve a class action settlement, the Court must find it to be "fair, adequate, and reasonable." *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422, *4 (S.D. Fla. May 7, 2002); *Bennett*, 737 F.2d at 986. In making this overall determination, the Court must consider the following factors:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of Plaintiffs' success on the

[40] *See* DE 82-1 at § VI; Cate Decl. at ¶ 24; Solove Decl. at ¶ V.D.

[41] *See Cotton*, 559 F.2d at 1331; *see also Behrens*, 118 F.R.D. at 538 (citations omitted); Mullenix Decl. at ¶ 132.

> merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso v. Southtrust Bank Nat'l Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994). Courts have emphasized that the above factors should not be applied in a formalistic fashion. *See, e.g.*, *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992). Too, "[i]n evaluating these considerations, the Court must not try the case on the merits." *Amoco*, 3211 F.R.D. at 467 (citation omitted). "Rather, the Court must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'" *Id.*

Also, "[i]n evaluating a settlement's fairness, 'it should [not] be forgotten that compromise is the essence of a settlement. The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might [be] gained.''" *Amoco*, 211 F.R.D. at 467 (citing *Cotton*, 559 F.2d at 1330). "Above all, the court must be mindful that 'inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'" *Amoco*, 211 F.R.D. at 468 (citation omitted).

**1. The Settlement is Free From Fraud and Collusion**

This Court has found:

> no evidence of collusion in this proposed settlement… Plaintiffs and Defendants submitted to mediation before Mr. Chaplin, an eminently qualified mediator appointed by this Court. These negotiations took many months before resulting in a settlement. The Court is very familiar with the professionalism and integrity of many of the attorneys before it. Based on all of these factors, the Court is convinced that there is no evidence of collusion here.

DE 90 at 10-11. The length and contentious nature of the arm's-length negotiations demonstrate the fairness of the Settlement and proves that it is not a product of fraud or collusion.

The court appointed mediator, James Chaplin, who has practiced law for more than 40 years, has for the past 23 years focused his practice on the mediation of complex civil litigation matters.

Chaplin Decl. at ¶¶ 3, 5. He has mediated thousands of cases in numerous states and he literally wrote the rules for conducting mediations in Florida. *Id.* at ¶¶ 4-5. In this case, Mr. Chaplin used his extensive mediation experience and skills to guide the Parties to a fair and reasonable settlement that the Parties could not agree to two years earlier.

The arm's length negotiations that ultimately led to the Settlement Agreement are described in the declaration of Mr. Chaplin. *See* Chaplin Decl. Mr. Chaplin emphasized that the negotiation sessions "were very difficult and contentious" as "the parties and their counsel [were] in an adversarial posture where each attorney/client team acted in their own best interests." *Id.* at ¶¶ 9, 16. Mr. Chaplin observed that all "analysis and negotiation were conducted at arms length and there was never any hint of collusion." *Id.* at ¶ 17. He summed up by noting that in his "considered opinion, the resolution of the claims of the class in this case is fair and adequate for members of the class. The class members and defendants were well represented by capable, informed and aggressive counsel." *Id.* at ¶ 18.

Importantly, Mr. Chaplin noted that it was only after the Injunctive Relief and the release were committed to a term sheet and executed by the Parties did the Parties begin to negotiate incentive awards for the Named Plaintiffs. *Id.* at ¶¶ 9-11. Further, it was not until the incentive awards issue was fully resolved that the Parties negotiated and resolved the issue of attorneys' fees and costs. *Id.* at ¶¶ 12-15.

In addition, the lack of collusion is evidenced by the fact that the Defendants fully participated in the lengthy Fresco I mediation and despite the "best efforts" of an experienced, court-appointed mediator, Rodney Max, the Parties could not come to a resolution until a second, year and one-half long, mediation was conducted. Max Decl. at ¶¶ 13, 15. Mr. Max described the Fresco I mediation as "particularly hard-fought." *Id.* at ¶ 12. Like Mr. Chaplin, Mr. Max "never witnessed

or sensed any collusiveness between the parties. To the contrary, at each point during these negotiations, the settlement process was conducted at arm's-length and, while professionally conducted, was quite adversarial." *Id.* at ¶ 14.

Moreover, the extensive Notice Program supports a finding that there was no collusion between the Parties.[42] The Notice Program which was agreed upon by the Parties, ordered by the Court, and eventually provided to the Settlement Class reached approximately 80% of the Settlement Class Members. Finegan Decl. at ¶ 7. The fact that the Parties were eager to apprise as many Settlement Class Members as possible of the Settlement indicates a lack of collusion.

[42] Mullenix Decl. at ¶¶ 142-144; *see Green v. Am. Express Co.*, 200 F.R.D. 211, 212 (D.N.Y. 2001) (citing *Doe v. Perales*, 782 F. Supp. 201, 206 (W.D. N.Y. 1991) (rationale behind notice afforded under Rule 23 is to protect the absent class members from prejudice and to ensure that there is no collusion between the named parties in forging a settlement); NEWBERG ON CLASS ACTIONS § 11.66 (3d ed. 1992); *see also* Notes of Advisory Committee on 2003 amendments to Rule 23 ("Notice calculated to reach a significant number of class members often will protect the interests of all.").

**2. This Settlement Avoids Complex, Lengthy, and Expensive Litigation**

The Parties faced the certainty that further litigation would be expensive, complex, and time-consuming. This is a nationwide case with more than 200,000,000 Settlement Class Members. Future litigation would continue to involve detailed exploration of the intricacies of each Defendant's computer databases. This exploration would require the hiring of forensic computer experts, which would in turn lead to further substantial motion practice and discovery disputes. Settlement avoids these disputed, complex legal issues, including, among others, the construction of the DPPA; and the propriety of class certification under Rule 23. As this Court observed, "Plaintiffs have advanced a novel claim based on a statute with relatively little case law interpreting it." DE 90 at 11.

In *Kehoe*, the Eleventh Circuit held that proof of actual damages was not required to recover statutory liquidated damages under the DPPA. However, the Eleventh Circuit held further that any award of damages under the DPPA, including statutory liquidated damages, was discretionary. *Kehoe,* 421 F.3d at 1216-17. Thus, there is much uncertainty as to the size of the monetary recovery that would be available to the Class should the case have continued.

It must be noted that this Litigation challenged a fundamental aspect of Defendants' business practices. Defendants were expected to (and did) vigorously resist Named Plaintiffs' efforts to obtain class-wide relief. Defendants would certainly continue along the same path. Defendants insist that their use of DPPA-regulated information was for purposes expressly permitted under the statute. Since Defendants have superior information about their business practices, they may have been able to establish a *prima facie* defense which Named Plaintiffs would have been hard pressed to overcome. While Named Plaintiffs and Class Counsel believe that they could have made good arguments at summary judgment and at trial on a claim for statutory damages, countervailing

arguments exist and a favorable outcome was not guaranteed. Further, Defendants argued that to prevail on the merits each individual plaintiff would have to engage in a complex series of tracing steps which would render the case unmanageable as a class action. Defendants claimed that they received data from non-regulated sources, and argued that for any individual plaintiff to prevail against them on a DPPA claim, she/he would have to trace the use of his or her information to the particular Defendant and establish that the information was, in fact, subject to regulation under the DPPA. Defendants have also argued that they did not "knowingly" obtain, disclose, or use DPPA regulated information, as required by the DPPA as a condition to liability. The meaning of the term "knowingly" under the DPPA is presently an unsettled question.[43]

Each of these issues has already consumed huge quantities of time, money, and judicial resources. Indeed, if the case were to continue, any of the Court's rulings on these issues would likely be appealed. *See Lipuma*, 406 F. Supp. 2d at 1323. Any trial would have been long, complicated, expensive, and fraught with risk. Accordingly, even if Named Plaintiffs were ultimately to prevail in the Litigation (which Defendants vigorously contest), that success would bear fruit for the Settlement Class only after years of trial and appellate proceedings and the expenditure of millions of dollars in both legal fees and expenses by both sides. By contrast, the Settlement Agreement provides the Settlement Class with certainty of result and an extremely high level of assurance regarding the protection of their personal, private information without the expense, uncertainly, and substantial delay of future litigation. *See Lipuma*, 406 F. Supp. 2d at 1324 (approving settlement that would "'alleviate the need for judicial exploration of these complex

[43] *See Fid. Fed. Bank & Trust v. Kehoe*, 126 S.Ct. 1612 (2006) (Scalia, J., concurrence).

subjects, reduce litigation cost, and eliminate the significant risk that individual claimants might recover nothing'") (citation omitted).

### 3. The Settlement Was Achieved After Many Years of Contentious Litigation and Negotiations

Class Counsel began investigating certain of the Named Plaintiffs' claims in early 2002.[44] Several complaints[45] were filed in 2003 which were removed to this Court, and consolidated to form the aforementioned Fresco I litigation. Since the inception of Fresco I through the present day, extensive formal and informal discovery has been conducted as to Defendants' practices relating to DPPA-regulated information. For more than six years, Class Counsel has had investigators pursuing the facts, including a full-time investigator with experience as an investigative reporter and an investigator with the Florida Office of the Attorney General who is also a certified fraud examiner.[46]

In Fresco I, Class Counsel participated in discovery relating specifically to Defendants – propounding and reviewing responses to interrogatories, requests for admissions, and requests for production of documents.[47] Since the case was severed, Class Counsel continued the formal

---

[44] Joint Decl. at ¶ 1.; *see, e.g.*, Welch Decl. at ¶ 6; Portley Decl. at ¶ 2.

[45] *Linda Brooks and Richard Fresco v. Auto Direct Data, et. al.*, Case No. 03-07410 (17th Cir. Crt. Broward Co.), filed April 24, 2003, and removed to this Court on May 29, 2003. In the Southern District of Florida: *Levine v. Reed Elsevier, Inc.*, Case No. 03-CV-80490, filed May 30, 2003; *Levine v. Choice Point Public Records, Inc., et al.*, Case No. 03-CV-80491, filed May 30, 2003. In the Middle District of Florida: *Heretick and Rosen v. R.L. Polk Co.*, Case No. 08-CV-1250-T26-TBM, filed June 16, 2003; *Heretick and Rosen v. Experian Info. Serv., Inc.*, Case No. 03-CV-1250-T26-MAP; filed June 16, 2003; *Rosen v. Reed Elsevier, Inc.*, Case No. 03-CV-261-FtM-29DNF, filed May 29, 2003; *Rosen v. Seisint, Inc.*, Case No. 03-CV-263-FtM-29-DNF, filed May 30, 2003; *Rosen v. ChoicePoint, Inc.*, Case No. 03-CV-264-FtM-29DNF, filed May 30, 2003; *Rosen v. Acxiom Corp.*, Case No. 03-CV0267-FtM-29-DNF, filed June 2, 2003; *Rosen v. eFunds Corp.*, Case No. 03-CV-269-FtM-29-DNF, filed June 3, 2003; *Heretick, et al. v. Automotive Directions, Inc.*, Case No. 03-CV-1278-T26-TBM, filed June 20, 2003.

[46] *See* Joint Decl. at ¶ I.A.1.

[47] Joint Decl. at ¶ 6; Portley Decl. at ¶ 2; Welch Decl. at ¶¶ 6 and 8; Sales Decl. at ¶¶ 18-29; Green Decl. at ¶ 11; Goodman Decl. at ¶¶ 6-10; Perwin Decl. at ¶¶ 8-13.

discovery – serving more than 400 requests for admission on each Defendant and serving sets of document requests. Joint Decl. at ¶ 7. Class Counsel also prepared for and took a total of ten (10) complex depositions of Defendants' corporate representatives. *Id.* To complete this task, Class Counsel had to do extensive preparation before traveling to Arkansas and Michigan to conduct the day-long depositions. *Id.*

Additionally, the Parties engaged in significant motion practice. Specifically, Class Counsel reviewed and researched dispositive motions for judgment on the pleadings that were filed by each Defendant on April 4, 2008 as well as motions concerning the ongoing discovery. DE 48-50, 52, 59. Prior to this case being severed from Fresco I, Defendants joined their co-defendants in moving for judgment on the pleadings on February 18, 2004 and summary judgment on June 25, 2004. Fresco I DE 118, 304.

As referenced elsewhere in this Memorandum, the parties have engaged in almost two (2) years of mediation over the last six (6) years under the supervision of extremely experienced, well-qualified mediators. *See* Chaplin Decl.; Max Decl. Both Mr. Chaplin and Mr. Max have sworn that the mediation sessions were all hotly contested and conducted at arm's length. *Id.* These sessions necessarily involved detailed negotiations of critical legal issues and business practices that resulted in very tense meetings. *Id.* It was through the herculean efforts of mediators with a combined fifty (50) years of mediation experience that this Litigation was finally resolved more than six (6) years after it was filed. *Id.* In this case, the extreme length and complexity of the procedural posture weighs heavily in favor of a finding that the Settlement that provides substantial Injunctive Relief for each and every Settlement Class Member is imminently fair and reasonable. Indeed, in preliminarily approving the Settlement, this Court found that the "complexity, expense, and duration of this litigation" all weighed in favor of approval. DE 90 at 11.

### 4. The Settlement Is Fair, Reasonable and Adequate In Light of the Probability of Plaintiffs' Success on the Merits and the Possible Range of Recovery

"By settling this action, the parties have shortened what would have been a very hard-fought and exhausting period of time, which may have realistically ended with a decision similar to the terms of this settlement" or potentially denied any relief and achieved no benefit for Settlement Class Members. *See Behrens*, 118 F.R.D. at 543. The range of monetary recovery the Court may award under the DPPA is discretionary. *Kehoe*, 421 F.3d at 1217. Achievement of any relief in the case, involves numerous practical, economic, and legal impediments.

By contrast, in the view of the Parties and the experts retained by them, the Settlement secures for the Settlement Class important and substantial improvements in privacy protections, which not only ensure compliance with the DPPA, but go far beyond what the DPPA requires to establish a model privacy regime for Defendants' industry which will have the force of law.[48] "[I]in reviewing a proposed settlement, as here, the Court must take into account 'the clear policy in favor of encouraging settlements . . . particularly in an area where voluntary compliance by the parties over an extended period will contribute significantly toward ultimate achievement of statutory goals.'"[49] Here, each Class Member gains the benefit of the substantial Injunctive Relief while avoiding the risk that they would have received nothing should the case had an unfavorable outcome.

#### a. Class Received the Benefit of an Extensive Notice Program

---

[48] Ponemon Decl. at ¶¶ 17; Cate Decl. at ¶¶ 28, 29.

[49] *Lipuma*, 406 F. Supp. 2d at 1314 (quoting *Patterson v. Newspaper & Mail Deliverers' Union*, 514 F.2d 767, 771 (2d Cir. 1975)(citations omitted); *see Amoco*, 211 F.R.D. 457, 466 (S.D. Fla. 2002); *see also Cotton*, 559 F.2d at 1331 (same).

In 2003, the Advisory Committee on Civil Rules amended Rule 23(c)(2)(A) to authorize federal courts to "direct appropriate notice to classes the court certifies under Rules 23(b)(1) or (b)(2)." After preliminary approval by the Court, the Settlement Class Members were afforded ample notice of the Settlement under the court-ordered Notice Program as if the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA") applied. DE 90 at 14; *see also* Finegan Decl. First, consistent with the procedures set forth in CAFA, more than 100 state and federal governmental authorities were notified of the terms of the Settlement Agreement, their opportunity to object to the settlement, attend the fairness hearing, and freely obtain additional information by mail, telephone, and on the Internet. DE 89-1 at ¶ 4 (Declaration of Stephen J. Cirami).

Secondly, the Parties agreed that the extensive Notice Plan would be conducted by the accomplished professional notice provider, the Garden City Group. DE 82-1 at V.B.; Finegan Decl. at ¶ 2. This Court approved the Notice Plan that Garden City put into action – finding that it was "extensive and multifaceted." DE 90 at 14. The Notice Plan employed a combination of media publications and Internet notices that reached approximately 80% of the Settlement Class Members. Finegan Decl. at ¶ 4, 7. It should be noted that the print publications used by Garden City had a cumulative circulation of more than 88 million. *Id.* at ¶ 9. Further, the extensive Notice Plan exceeded the notice program that this Court approved in the *Ass'n for Disabled Americans, Inc* case, which like here, was a Rule 23(b)(2) settlement. Mullenix Decl. at ¶ 126.

Importantly, the notice included the essential terms of the proposed Settlement; disclosed the incentive awards; provided information regarding attorneys' fees and expenses; set forth the time and place of the Fairness Hearing; and explained the right to object to the Settlement. Finegan Decl. at ¶ 8. The notice was created in a "plain language" style which is consistent with the notices drafted and proposed by the Federal Judicial Center at the request of the Advisory Committee on the Federal

Rules of Civil Procedure. *Id.* The Notice Plan, among other things, informed millions of Settlement Class Members of their rights to pursue individual actions for actual and punitive damages and educated them as to the Injunctive Relief program.

Notably, Defendants agreed to pay all costs of notice and its administration under the Settlement, which bestowed an additional benefit on Settlement Class Members, while not reducing any of the other Settlement benefits. DE 82-1 at V.J.

**b. Settlement Benefits are Substantial and Secure the Protection of Settlement Class Members' Privacy Rights**

The Settlement will provide important and significant safeguards for the protection and advancement of the privacy rights of the Class. *See* Solove Decl. at ¶ V.D.; Ponemon Decl. at ¶ 17. Defendants – who are significant players in the information aggregation industry – will be required to adopt and implement a number of measures to safeguard the privacy rights of the Class. DE 82-1 at VI.B. Moreover, the measures will be monitored by credentialed privacy professionals to ensure that Defendants will implement and comply with the requirements of the Injunctive Relief. DE 82-1 VI.B. Also, Defendants will be enjoined from violating the DPPA for a decade and compelled to comply with the extensive DPPA Compliance Program for seven (7) years.

The key aspects of the Injunctive Relief are as follows:

- The Injunctive Relief requires an initial compliance assessment which is an important first step to analyze and correct areas in which Defendants are not in compliance with the law; DE 82-1 at § VI.B.2.

- The Injunctive Relief then requires the establishment of a DPPA Compliance Program with an accountable DPPA Compliance Director that will establish, among other things, a written set of rules regarding DPPA-regulated data; employee education and training; confidentiality agreement for employees who handle DPPA-regulated data; customer-compliance audits to verify that customers are complying with strict contractual terms; compliance reviews for new products that would use DPPA-regulated data; and the use of a

written customer credentialing procedure to pre-screen customers prior to the use or sale of DPPA-regulated data; DE 82-1 at V.B.3-8.

- The Injunctive Relief requires that the Defendants' DPPA Compliance Program be overseen by internal and independent, third-party assessors who will be vetted to guarantee certification and experience in the realm of privacy issues; DE 82-1 at VI.B.6. and

- The Injunctive Relief requires that Class Counsel monitor Defendants' compliance with the Settlement and Injunctive Relief and enforce the Settlement should any instances of noncompliance occur. DE 82-1 at VI.B.3-8.

Dr. Larry Ponemon, a leading privacy expert, opined that the economic value of the seven years of Injunctive Relief, described above, exceeds $3 billion. Ponemon Decl. at ¶ 16. Dr. Ponemon based this value on the astronomical cost savings that the substantial Injunctive Relief will provide millions of licensed drivers and motor vehicle registrants who will not suffer a data breach due to the Settlement. *Id.* at ¶¶ 6-8. The costs of a single data breach can be substantial and derail an individual's life for multiple years. *Id.* Dr. Ponemon expects the Injunctive Relief to reduce the probably of noncompliance with the DPPA by **half.** *Id.* at ¶ 7. Moreover, it should be noted that Dr. Ponemon's $3.34 billion estimated value was calculated using "conservative estimates for monetary losses" including the minimum wage for calculating the value of the lost time. *Id.* at ¶ 6. Accordingly, Named Plaintiffs' and Class Counsel's efforts have resulted in the settlement relief which indisputably provides substantive, tangible benefits to the Class.

Privacy expert Prof. Daniel Solove concurred with Dr. Ponemon in opining that the Injunctive Relief would "significantly improve the way Defendants handle DPPA-regulated information" and that the "collection, use, or disclosure of personal data can result in many (not just one) privacy problems and harms." Solove Decl. at ¶ 5. Prof. Solove further opined that "[p]rivacy has a significant value" since the improper use of "innocuous and non-intimate information can

create privacy harms" such as identity theft, physical danger, and other frauds. *Id.* at ¶¶ 5, 15. Specific to companies like Defendants, Prof. Solove pointed out the real danger of personal information being collected in databases and disseminated between businesses as the individual loses control of the information and cannot fix inaccuracies or protect himself or herself from data breaches. *Id.* at ¶¶ 11-12. In regard to the Settlement, Prof. Solove began by emphasizing that the Injunctive Relief's compliance director and third-party oversight would be "effective way[s] to ensure that companies are adhering to the objectives of the DPPA." *Id.* at ¶ 20. Prof. Solove then opined that the Compliance Program "will be very effective" as such "continual vigilance" is necessary to assure a company's compliance with the law. *Id.* at ¶ 21. In sum, Professor Solove opined that "a compliance program will help promote compliance with [the] DPPA over a long period of time, integrating it within a company's culture, and ensuring that practices do not drift back to their old ways." *Id.* at ¶ 22.

Further, it should be noted that a third privacy expert Fred Cate found in Fresco I that the virtually identical injunctive relief "requirements far exceed those imposed by the DPPA or related state laws. In fact,… they exceed the compliance requirements imposed by any existing federal law concerning data privacy, even those applicable to highly regulated sectors such as financial information or healthcare." Cate Decl. at ¶ 28. Thus, Prof. Cate opined that the Fresco I injunctive relief obligations "not only incorporate and exceed the obligations created by Congress in the DPPA, they also create effective privacy protection." Cate Decl. at ¶ 29. Prof. Cate concluded that the injunctive relief went beyond the circumstances of the litigation:

> [The injunctive relief] also reflects the critical lessons of the past decade about how to build effective privacy protection regimes. Neither the federal government nor the States have provided specific guidance as to the steps required by private-sector entities to ensure they comply with the DPPA. If implemented, [the injunctive relief]

> will provide a blueprint for ensuring not only full compliance with the DPPA, but effective privacy protection for individuals and a useful model for future protections.

Cate Decl. at ¶45. Since the Injunctive Relief is identical to that obtained in Fresco I, Prof. Cate's opinions are equally applicable here.

Thus, three of the nation's most renowned privacy experts uniformly affirm that the Settlement provides substantial Injunctive Relief that will be essential to protecting the privacy interests of Settlement Class Members and ensure compliance with the DPPA and DPPA State Equivalents.[50] Absent the Settlement, the DPPA and DPPA State Equivalents contain a series of broad brush prohibitions and permissible purposes, which neither address nor even contemplate the specific business practice changes and enhancements necessary to assure compliance with these laws. *Id*. The Injunctive Relief fills this void. If finally approved and incorporated into a Final Order and Judgment, the Settlement would institute a legal regime for personal information protection and require Defendants to abide by standards that far exceed the DPPA requirements. *Id*.

**c. The Settlement Waiver and Release are Reasonable in Light of the Settlement Benefits**

In exchange for the Injunctive Relief, the Settlement contains a release of statutory damage and injunctive claims under the DPPA and DPPA State Equivalents and the class action procedural device which is permissible in the settlement context.[51] Courts generally recognize, approve, and uphold general releases, and have done so for many years. *Amoco*, 211 F.R.D. at 471 (citing numerous authorities).[52] Here, the interests of individual Settlement Class Members are protected,

---

[50] Ponemon Decl. at ¶¶ 13, 16, 17; Solove Decl. at ¶ V.D.; Cate Decl. at ¶¶ 2, 45; *see also* Mullenix Decl. at ¶ 36.

[51] *Amoco*, 211 F.R.D. at 472; Mullenix Decl. at ¶¶ 132-136; DE 82-1 at § IX.A.

[52] "[F]ederal class action settlements containing a release of state law claims are both common and

because the release under the Settlement does **not** bar individual actions for actual damages and individual punitive damage suits based on individual actual damages caused by a DPPA or DPPA State Equivalent violation.[53]

**5. The Opinions of Class Counsel, Class Representatives, and the Substance and Amount of Opposition Favor Settlement**

In light of the extensive, contentious Litigation in this case, the difficulties inherent in enforcing a little-known privacy statute in a context of an enormous nationwide class, and, most importantly, the highly substantive Injunctive Relief, Class Counsel and Class Representatives believe the Settlement Agreement is reasonable and equitable.[54] The Court should give "great weight to the recommendation of counsel for the parties, given their considerable experience in this type of litigation" which as noted above involves not only extensive class litigation, but class litigation involving DPPA claims.[55]

Final approval of this settlement has also received favorable support from legal practitioners, law professors, and experts, whose views and affirmations have been submitted to the Court through a series of supporting declarations and affidavits.[56] The support for this settlement is evident not

---

presumptively valid." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (D. Tex. 2007) (citing *Amoco*, 211 F.R.D. at 471 (citing *Matsushita Elec. Indus: Co. v. Epstein*, 516 U.S. 367, 376-77 (1996)).

[53] Mullenix Decl. at ¶¶ 132-136; DE 82-1 at § IX.A.

[54] *See* Declarations and Affidavits of all Class Counsel and Class Representatives.

[55] *See Warren*, 693 F. Supp. at 1060 (M.D. Fla. 1988); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988)("If plaintiffs' counsel did not believe that these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement"); *In re Domestic Air Transp.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. 'The trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel'").

[56] Declarations of Ponemon, Mullenix, Solove, Schwartz and Gonzales.

only in this highly positive reaction from experts from across the country, but also in the exceedingly minimal opposition to the Settlement Agreement received from absent Settlement Class Members.

Through a series of nationwide publications in Spanish and English, the Internet, and postings in state driver's license bureaus, notice was provided to the Settlement Class of more than 200 million persons, which was given a full and fair opportunity to object to any or all of the terms of the proposed Settlement Agreement.[57] To date, the notification process to the Settlement Class has generated only a handful of objections. Further, many of these objectors are professionals who are offering the same canned objections as they did in Fresco I. Class Counsel have filed a separate memorandum that addresses the issues alleged by the handful of objectors, and shows them to be both unhelpful and unconvincing. In any event, "a small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Amoco,* 211 F.R.D. at 467.[58]

Finally, not a single state or federal governmental official has filed an objection, which is significant because government officials are most knowledgeable about the DPPA and DPPA State

---

[57] *See* Finegan Decl.; Mullenix Decl at ¶¶ 142-144.

[58] *See Cotton*, 559 F.2d at 1331; *Bennett*, 96 F.R.D. at 352-53; *In re Dennis Greenman Sec. Litig.*, 622 F. Supp. 1430, 1442 (S.D. Fla. 1985); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86-7 (2d Cir. 2001); *In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) ("The District Court correctly found that [the small number of objectors] weighed strongly in favor of the Settlement.")); *Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (concluding that when "only" 29 members of a 281 person class [i.e., 10% of the class] objected, the response of the class as a whole "strongly favors [the] settlement"); *Cotton*, 559 F.2d at 1333 (settlement approval affirmed despite objections by half of the current employee class); *Elkins v. Equitable Life Ins. of Iowa*, No. CIVA96-296-CIV-7-17B, 1998 WL 133741, at *28 (M.D. Fla. Jan. 27, 1998) ("[t]here have been only six objections received from a Class of approximately 109,000 policy owners, which is a de minimus number" relative to the size of the class).

Equivalents, and would have an interest in protecting their motor vehicle departments and their citizens. Mullenix Decl. at ¶ 146. Their lack of objection speaks volumes.[59]

## IV. CONCLUSION

For all of the foregoing reasons, Class Representatives and Class Counsel respectfully request that this Court enter a Final Judgment and Order approving the Parties' settlement.

DATED: November 9, 2009

Respectfully submitted,

By: */s/ Tod Aronovitz*

**Tod Aronovitz**
**ARONOVITZ LAW**
777 Brickell Avenue, Suite 850
Miami, FL 33131
305-372-2772 Telephone
305-397-1886 Facsimile

**John A. Yanchunis**
**JAMES HOYER NEWCOMER & SMILJANICH, P.A.**
One Urban Center, Suite 550
4830 West Kennedy Boulevard
Tampa, Florida 33609
813-286-4100 Telephone
813-286-4174 Facsimile

**David D. Welch**
**DAVID D. WELCH LAW OFFICES**
2211 East Sample Road, Suite 203
Lighthouse Point Professional Building Lighthouse
Point, Florida 33064
954-943-2020 Telephone
954-782-1552 Facsimile

[59] *See, e.g.*, *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 590 (E.D. Mich. 2006) (granting final approval to proposed class action settlement and noting that "GM issued notice to the appropriate federal and state attorneys general pursuant to [CAFA.] None submitted an objection."); *Access Now, Inc.*, 2002 WL 1162422 (S.D. Fla. May 7, 2002) ("The Court notes that in several recent Title III of the ADA class actions in this district which were similarly noticed, the Department of Justice and several state attorneys general filed objections. This has not been the case in this matter. The fact that no objections have been filed strongly favors approval of the settlement.").

**Joel S. Perwin**
**JOEL S. PERWIN, P.A.**
169 E. Flagler Street
Alfred I. DuPont Building, Suite 1422
Miami, Florida 33131
305-779-6090 Telephone
305-779-6095 Facsimile

**Peter A. Portley**
**PORTLEY AND SULLIVAN**
Lighthouse Point Professional Building
2211 E. Sample Road, Suite 204
Lighthouse Point, Florida 33064
954-781-7600 Telephone
954-941-3469 Facsimile

**Lawrence D. Goodman**
**DEVINE GOODMAN RASCO & WELLS, P.A.**
777 Brickell Avenue, Suite 850
Miami, Florida 33131
305-374-8200 Telephone
305-374-8208 Facsimile

**James K. Green**
**JAMES K. GREEN, P.A.**
Suite 1650, Esperante´
222 Lakeview Avenue
West Palm Beach, Florida 33401
561-659-2029 Telephone
561-655-1357 Facsimile

**Jack Scarola**
**David J. Sales**
**SEARCY DENNEY SCAROLA**
**BARNHART & SHIPLEY, P.A.**
2139 Palm Beach Lakes Boulevard
P. O. Drawer 3626
West Palm Beach, Florida 33402
800-780-8607 Toll free
561-686-6300 Telephone
561-478-0754 Facsimile

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been electronically filed with the Clerk of the Court using CM/ECF this 9th day of November, 2009. I further certify that the foregoing document is being served on all counsel of record identified on the attached Service List, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel who are not authorized to receive electronically Notices of Electronic Filing.

By: *\/s/ Tod Aronovitz*

**SERVICE LIST**
**Fresco vs. R L Polk & Co. and Acxiom Corp.**
**Case No. 07-60695 Civ-Martinez/Brown**

**ATTORNEYS FOR PLAINTIFFS:**

**Tod Aronovitz**
ta@aronovitzlaw.com
**ARONOVITZ LAW**
777 Brickell Avenue, Suite 850
Miami, FL 33131
305-372-2772 Telephone
305-397-1886 Facsimile

**John A. Yanchunis**
jyanchunis@jameshoyer.com
**JAMES HOYER NEWCOMER & SMILJANICH, P.A.**
One Urban Center, Suite 550
4830 West Kennedy Boulevard
Tampa, Florida 33609
813-286-4100 Telephone
813-286-4174 Facsimile

**David D. Welch**
ddw@123@bellsouth.net
**DAVID D. WELCH LAW OFFICES**
2211 East Sample Road, Suite 203
Lighthouse Point Professional Building
Lighthouse Point, Florida 33064
954-943-2020 Telephone
954-782-1552 Facsimile

**Joel S. Perwin**
jperwin@perwinlaw.com
**JOEL S. PERWIN, P.A.**
169 E. Flagler Street
Alfred I. DuPont Building, Suite 1422
Miami, Florida 33131
305-779-6090 Telephone
305-779-6095 Facsimile

**Peter A. Portley**
pportley@portleysullivan.com
**PORTLEY AND SULLIVAN**
Lighthouse Point Professional Building
2211 E. Sample Road, Suite 204
Lighthouse Point, Florida 33064
954-781-7600 Telephone
954-941-3469 Facsimile

**Lawrence D. Goodman**
lgoodman@devinegoodman.com
**DEVINE GOODMAN RASCO & WELLS, P.A.**
777 Brickell Avenue, Suite 850
Miami, Florida 33131
305-374-8200 Telephone
305-374-8208 Facsimile

**James K. Green**
jameskgreen@bellsouth.net
**JAMES K. GREEN, P.A.**
Suite 1650, Esperante´
222 Lakeview Avenue
West Palm Beach, Florida 33401
561-659-2029 Telephone
561-655-1357 Facsimile

**Jack Scarola**
jsx@searcylaw.com
**David J. Sales**
djs@searcylaw.com
**SEARCY DENNEY SCAROLA BARNHART & SHIPLEY, P.A.**
2139 Palm Beach Lakes Boulevard
P. O. Drawer 3626
West Palm Beach, Florida 33402
800-780-8607 Toll free
561-686-6300 Telephone
561-478-0754 Facsimile

**ATTORNEYS for Defendant, R.L. Polk & Co.**

**Lewis F. Collins, Jr.**
lcollins@butlerpappas.com
**Scott J. Frank**
sfrank@butlerpappas.com
**BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP**
777 S. Harbour Island Boulevard
One Harbour Place, Suite 500
Tampa, Florida 33602
813-281-1900 Telephone
813-281-0900 Facsimile

*Of Counsel:*
**Christopher M. Mason**
(Admitted *Pro Hac Vice*)
cmason@nixonpeabody.com
**NIXON PEABODY, LLP**
437 Madison Avenue
New York, NY 10021
212-940-3017 Telephone
212-940-3111 Facsimile

**ATTORNEYS for Defendant, Acxiom Corporation**

**Barry R. Davidson**
bdavidson@hunton.com
**Juan C. Enjamio, Esq.**
jenjamio@hunton.com
**Gustavo J. Membiela, Esq.**
gmembiela@hunton.com
**HUNTON & WILLIAMS LLP**
Mellon Financial Center, Suite 2500
1111 Brickell Avenue
Miami, Florida 33131
305-810-2500 Telephone
305-810-2460 Facsimile

**ATTORNEYS for Objectors, Jeffrey Weinstein and D.J. Powers**

Jeffrey L. Weinstein
518 Tyler Street
Athens, TX 75751
903-677-5333 Telephone
903-677-3657 Facsimile

**ATTORNEYS for Objectors, Jacqueline Pio and Anthony Pio**

John Pentz
2 Clock Tower Place, Suite 260G
Maynard, MA 01754
978-461-1548 Telephone
707-276-2925 Facsimile

- and –

Nicolas Gutierrez
Gutierrez & Zarraluqui, LLP
283 Catalonia Avenue, Suite 200
Coral Gables, Florida 33134
305-397-2005 Telephone

**Attorneys for Objector, Scott Owen Ashby**

Patrick Geraghty
Geraghty, Dougherty & Edwards, P.A.
P. O. Box 1605
Fort Myers, FL 33902-1605
239-334-9500 Telephone
239-334-8940 Facsimile

**ATTORNEYS for Objectors, James Patrick Roberts, James Booker, Willie Booker, Lowry Briley, Twilah Brown, James Clary, Sharon Clary, Alice cooks, Arlando Thomas Cooks, Elizabeth DeWitt, Kennety Gossip, Sr., Kennice Gossip, Pamela Hensley, Robert Holliness, Carolyn Holub, Brandi Jewell, Tracy Lynn Karp, Venisia McGuire, David Lee Patterson, Ronnie Phillips, Luz Ann Roberts, Sharon Taylor, Kimberly Underwood, Marilyn Whitaker, and William Wilson**

Jeremy Wilson
The Corea Firm PLLC
Renaissance Tower
1201 Elm Street, Suite 4150
Dallas, Texas 75270
214-953-3900 Telephone
214-953-3901 Facsimile