UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No.: Civ-07-cv-60695-JEM

| | |
|---|---|
| **RICHARD FRESCO, et al.,** | ) |
| Plaintiffs, | ) |
| v. | ) |
| **R.L. POLK & CO. and ACXIOM CORP.,** | ) |
| Defendants. | ) |

**POST-FAIRNESS HEARING BRIEF**
**OF JACQUELINE PIO AND ANTHONY PIO**

At the conclusion of the December 7, 2009 hearing in this case on the fairness of the proposed settlement and Class Counsel's application for reasonable attorney's fees, this Court invited all participants in that hearing to file closing briefs of no more than ten pages. The Pios hereby file this closing memorandum of points and authorities.

**I.     The Valuation Assigned to the Injunctive Relief Undermines Plaintiffs' Arguments Regarding the Impossibility of Recovering Monetary Damages.**

Plaintiffs' expert Ponemon opined in his affidavit that the value of the injunctive relief over the next 7 years will be $3 billion. The Plaintiffs would have this Court rely on this figure in calculating their attorney's fees on a percentage basis. If this figure is reliable for purposes of valuing the settlement, however, then it is also reliable for calculating damages caused by the Defendants' failure to comply with the DPPA for the past 7 years. While the parties have argued that the settlement is justified because there has been no evidence of actual damages presented by Plaintiffs in this action, that argument is undermined by Dr. Ponemon's contention that, in the absence of injunctive

relief, there will be $3 billion of actual damages over the next 7 years, and, therefore, by implication, there has been an equivalent amount of actual damages caused by the Defendants' possession of DPPA-protected information over the past 7 years.

These damages are being abandoned by the proposed settlement. While the right to bring individual damage claims is preserved, this case has demonstrated that those claims are simply not viable on an individual basis. The only possible proof of such damages is the type adduced by Dr. Ponemon in his affidavit, *i.e.*, on a class-wide basis based upon a probability analysis.

Second, the parties have argued that, despite the holding of Kehoe that proof of actual damages are not necessary in order to recover statutory damages under the DPPA, courts would be reluctant to impose such damages given the astronomical damages that could result. Dr. Ponemon's affidavit undermines this assertion, and makes it highly likely that a court would impose some amount of statutory damages in lieu of actual damages, as Congress intended, if it were convinced that the Defendants had caused aggregate actual damages of $3 billion over the last 7 years by their failure to comply with the DPPA.

The parties' arguments in favor of the settlement are based on the assumption that this is a case for technical violations only, with no consequential damages, and that, therefore, a non-monetary settlement is appropriate. Dr. Ponemon's affidavit establishes that this is decidedly not true, and that the actual damages caused by Defendants over the past 7 years is $3 billion. Because it is difficult to trace these damages to any particular class member, statutory damages are particularly appropriate in these circumstances.

2

Because there are substantial actual damages caused to the class, as demonstrated by the Ponemon affidavit, the settlement should not be approved.

## II. This Court Has Already Ruled That The Maximum Fee That May Be Awarded In a Non-Monetary Settlement is Class Counsel's Documented Lodestar To Date.

Class Counsel persists in its request for a $7.5 million fee, despite this Court's clear holding in Fresco I that the maximum permissible fee is Class Counsel's reasonable, documented lodestar.

> The Court notes that, although *Dague* was not a class-action case, the Supreme Court's reasoning for denying enhancements for contingency risks applies equally to class-action cases… Furthermore, the Eleventh Circuit has cited *Dague* in rejecting contingency enhancements in class-action cases, even those resolved by the settlement of the parties. *See Kenny A. ex rel. Winn v. Perdue*, 532 F.3d 1209, 1248 (11th Cir. 2008).

*Fresco I* at 19.

While Class Counsel made arguments appearing to support a percentage or common fund award in this case, the $3 billion valuation assigned by Dr. Ponemon is simply too preposterous and fantastical to establish any reliable basis for valuing what is essentially a non-monetary settlement. Therefore, Class Counsel spent most of the time at the December 7 hearing presenting witnesses who supported a lodestar fee award, broken down as follows:

$2.5 million for work on this case since severance[1]

---

[1] Class Counsel appear to have retreated from the position that the time they claim to have spent pursuing Acxiom and Polk pre-severance was not already included in the time they submitted in *Fresco I*, for which they have already been compensated. While Irwin Gonzalez testified that as far as he knew, the $3.5 million referenced on page 29 of Class Counsel's Motion for Attorney's Fees represented time that was excluded from the lodestar submitted for compensation in *Fresco I*, that is simply incredible and inconsistent with the practice of class lawyers generally in this country. Significantly, after lunch, Professor Eisenberg made no reference to any pre-severance lodestar, and said that in his opinion the $7.5 million requested fee was justified by the $2.5 million in post-severance lodestar combined with the $5 million for future monitoring. The Court may infer from this that Class Counsel is conceding that it included the Polk and Acxiom pre-severance lodestar in its Fresco I fee petition, and that therefore including it again in Fresco II would amount to double recovery.

3

$2.5 million for future monitoring of Acxiom
$2.5 million for future monitoring of Polk.

The latter two items grossly overstate the amounts that Class Counsel is likely to spend monitoring compliance with the injunction, especially given the role of the Third Party Assessor in the Settlement Agreement.

This Court has the benefit of previous briefing on this very subject in *Fresco I*, in which the Defendants in that case had an incentive to ensure that amounts escrowed for future monitoring were no more than necessary. *See* attached Motion to Reconsider at p. 8. The Third Party Assessor issues three reports during the term of the injunctive relief, each one two years apart. Class Counsel's role is limited to reviewing those three reports. *Id*. While Mr. Schwartz speculated that Class Counsel may undertake some investigation or discovery in addition to this defined role, any such unauthorized work or time is not covered by the Settlement Agreement and therefore not compensable.

In contrast to *Fresco I*, the Defendants at the December 7, 2009 hearing were oddly silent on the scope of Class Counsel's duties under the Settlement Agreement or their presumed good faith intent to comply with the injunction so as to make any discovery or unauthorized investigations superfluous. In any event, the $2.5 million of monitoring per defendant assigned by Professor Eisenberg and Mr. Schwartz almost certainly grossly overstates any reasonable amount of time Class Counsel could realistically spend monitoring and enforcing the injunction.

In any event, should this Court decide to award any amount in excess of Class Counsel's $2.5 million lodestar spent pursing these defendants post-severance, it should do what it did in *Fresco I* and require the Defendants to place any additional amounts in escrow as security for Class Counsel should it have to do more than the three reviews of

4

the Third Party Assessor's reports.  In the remote event that Defendants fail to comply to the extent requiring Class Counsel to engage in discovery or enforcement, they would be fully secured for any additional time.

Mr. Schwartz stated on cross-examination that placing future fees in escrow would create an incentive for Class Counsel to run up attorney's fees.  That incentive would be counter-balanced, however, by the Defendants' incentive to oppose any unnecessary or make-work time incurred by Class Counsel, since the Defendants, as well as any class member, would have the right to oppose any future fee requests.  That incentive would also serve the class, in that it would give Class Counsel an increased incentive to be vigilant to look for any opportunity to perform work in service of the injunction.

The corollary of Mr. Schwartz's observation is that pre-payment of future fees gives Class Counsel a disincentive to do any further work.  The Court should strive to maximize the incentives of all parties to ensure compliance with the injunction.  Placing some fees in escrow to secure Class Counsel for future work does precisely that.  First, it provides perhaps the best possible incentive for the Defendants to comply with the injunction, since any work Class Counsel is forced to do to enforce the injunction comes directly out of the Defendants' monies.  Second, it provides Class Counsel an incentive to perform all reasonable work in support of the injunction, while at the same time providing a disincentive to run up the clock with unnecessary hours, since the Defendants will be monitoring Class Counsel's fee petitions and will undoubtedly oppose any time not reasonably related to correcting compliance issues.  Placing money in escrow

5

essentially monetizes Defendants' compliance with the injunction -- if they comply, they will be rewarded by recovering all or most of the monies placed in escrow.

The Court should do precisely what it did in *Fresco I* and award Class Counsel $2.5 million now, to compensate them for work done to date, and order that some additional amount be placed in escrow to create incentives for all parties that will best ensure compliance with the injunction.

## III.   Class Counsel Failed To Comply With The Settlement Agreement and With FRCP 23(h).

The Settlement Agreement requires that Class Counsel file its fee application "in advance of the Court's deadline for submission of objections."  Settlement Agreement at para. VIII. A.  Such a requirement is consistent with FRCP 23(h)(1), which requires that all class members receive reasonable notice of class counsel's fee application, and have an opportunity to respond to it.  Here, class members' objections were due on October 9, 2009, while Class Counsel's fee application and all of the supporting affidavits were not filed until November 9, 2009.  This was a clear violation of both the Settlement Agreement and Rule 23(h).

While this failure to comply with Rule 23(h) may not seriously prejudice class members in some class action settlements where the fee is fairly straightforward, such as where it is taken from a monetary common fund and is governed by fairly consistent and familiar benchmarks, where, as here, Class Counsel has come up with shifting and fantastical justifications for its requested fees at the eleventh hour, Class Counsel's failure to file its fee application and to settle on a fee methodology before October 9, 2009 has severely prejudiced the class.  Dr. Ponemon's nonsensical $3 billion valuation of the injunction could not possibly have been anticipated by class members.  Almost in

acknowledgement of the preposterous nature of his valuation, Class Counsel did not call Mr. Ponemon as a witness at the December 7, 2009 hearing, and appeared to abandon the percentage of the fund methodology of justifying their fee in favor of a lodestar approach. The end result, however, is that Class Counsel is all over the map with their ever-shifting justifications for their $7.5 million fee request, and the class has never had an adequate opportunity to confront their arguments.[2]

Objectors continue to maintain that the case of *Kenny A. ex rel. Winn v. Perdue*, 532 F.3d 1209, 1228 (11th Cir. 2008) mandates a fee award of no more than Class Counsel's unenhanced lodestar. In light of the foregoing law of the case and governing case law, Class Counsel's request for $7.5 million in attorney's fees is grossly excessive and in violation of law.

---

[2] Of course, the opportunity to file these post-hearing briefs may help mitigate this defect to some extent.

## CONCLUSION

For the foregoing reasons, this Court should deny approval to the proposed Settlement, because, according to Class Counsel's own expert, the Class is giving up the right to bring a class action for actual damages of as much as $3 billion, as well as all right to statutory damages which Congress intended to be a proxy for actual damages since actual damages are so difficult to prove on an individual basis, in exchange for an injunction.  Moreover, this Court should award Class Counsel fees of no more than $2.5 million, its reasonable lodestar not already compensated, and require the difference between $7.5 million and Class Counsel's fee award to be placed in escrow to incentivize both the Defendants and Class Counsel to ensure that the injunction is complied with.

*/s/ Nicolas J. Gutierrez, Jr.*
Nicolas J. Gutierrez, Jr.
Gutierrez & Zarraluqui, LLP
283 Catalonia Ave., Suite 200
Coral Gables, FL  33134
Ph: (305) 397-2005

*/s/ John J. Pentz*
John J. Pentz, *pro hac vice nunc pro tunc pending*
Clasaxn@earthlink.net
2 Clock Tower Place, Suite 260G
Maynard, MA 01754
Ph: (978) 461-1548
Fax: (707) 276-2925

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on December 14, 2009 and was filed with the Clerk of Court using CM/ECF.

By: */s/ Nicolas J. Gutierrez*