UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-60695-Civ-Martinez/Brown

RICHARD FRESCO, CARLOS BARRETT,
JEFFREY HY, MARY ANN COLLIER,
ROY McGOLDRICK, ROBERT PINO,
KENNETH W. HERETICK, RUSSELL
V. ROSEN and JOEL LEVINE

        Plaintiffs,

vs.

R.L. POLK & CO., a Delaware corporation;
and ACXIOM CORPORATION, a Delaware
corporation,

        Defendants.
_____/

**PLAINTIFFS' MOTION FOR A BOND TO SECURE PAYMENT OF
COSTS AND ATTORNEYS' FEES ON APPEAL (FED. R. APP. P. 7) AND
INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF**

## I.    INTRODUCTION

Plaintiffs, RICHARD FRESCO, CARLOS BARRETT, JEFFREY HY, MARY ANN

COLLIER, ROY McGOLDRICK, ROBERT PINO, KENNETH W. HERETICK, RUSSELL V.

ROSEN, and JOEL LEVINE, for and on behalf of the Class Members ("Plaintiffs/Appellees"),

move this Court for entry of an Order, pursuant to Fed. R. App. P. 7, requiring (1) Objectors

Jeffrey Weinstein and D. J. Powers, representing themselves ("Weinstein Objectors"); (2)

Objectors Jacqueline Pio and Anthony Pio and their attorneys, John Pentz and Nicolas J.

Gutierrez[1] ("Pentz Objectors"); (3) Objectors Sharon Taylor, James Douglas Booker, and others,

_____

[1] Professional objector Pentz has utilized local counsel, Nicolas J. Gutierrez, Jr., for purposes of filing his appeal, given a pending request to appear *pro hac vice nunc pro tunc.* As discussed herein, Professional objector Pentz is a notorious professional objector.

and their attorneys, Kathryn L. S. Griswold[2] and Thomas M. Corea ("Corea Objectors"); and (5) Objectors Marvin Union and Robert Falkner[3] ("Siegel Objectors"), to post an appellate bond in the amount of $300,000, jointly and severally, consisting of $25,000 of "pure costs" and $275,000 for the Plaintiffs/Appellees' attorneys' fees.

**II.**     **MEMORANDUM OF LAW**

    **A.**     **A Rule 7 appeal bond, inclusive of attorneys' fees, is appropriate in this case.**

As this Court is well-aware, the resolution of this class action represents seven (7) years of legal work in a complex case seeking enforcement of a relatively new, untested federal privacy statute. The settlement confers important privacy benefits upon an enormous class of Americans, totaling over 200 million persons. Plaintiffs brought the underlying action against several data aggregation companies who were acting in violation of the Driver's Privacy Protection Act ("DPPA"), 18 USC §§ 2721-2725. The DPPA regulates the obtainment, use, and disclosure of "Personal Information" and "Highly Restricted Personal Information" from motor vehicle and driver's license records maintained by state departments of motor vehicles ("DMV").

---

[2]Similar to Attorney Pentz, Attorney Corea has utilized Florida counsel, given a pending admission to appear before the court. Although Corea generally litigates in the role of class counsel, Corea has demonstrated a willingness to employ the same tactics as the other professional objectors who have filed notices of appeal.

[3] Messrs. Union and Falkner are serial clients of professional objectors and are generally associated with professional objector Edward Siegel. Along with Pentz and Weinstein, Siegel is considered to be one of the most notorious professional objectors in the country. Falkner was represented by Siegel in connection with bringing identical objections to *Fresco, et al. v. Automotive Directions, Inc.*, No. 03-cv-61063 (S.D. Fla.). Siegel filed a notice of appeal in Fresco I on behalf of Falkner and another client, which was ultimately withdrawn with the settlement completely unaltered. In addition, Falkner has objected to numerous other class actions over the last decade while being represented by Siegel and other professional objectors such as Edward Cochran. A review of PACER by one of Class Counsel's investigators revealed that Falkner had lodged nearly eighty (80) class action objections over the last two (2) years.

Union has also previously served as Siegel's client to lodge objections to another class action settlement. *Sullivan, et al. v. DB Investments, Inc., et al.*, No. 08-2785 (3rd Cir. July 13, 2010). Here, Siegel appears to be orchestrating Appellants' actions from behind the scenes, as evidenced by the Notice of Appeal being mailed under a cover letter from Siegel's law office. Additionally, Siegel has personally represented to Class Counsel that he will represent Messrs. Union and Falkner in this appeal. As such, Union and Falkner will be referred to as the "Siegel Objectors."

The original class action complaint was brought before this Court by Plaintiffs in April 2003, and was styled *Fresco, et al. v. Automotive Directions, et al.* ("Fresco I").

After four years of adversarial litigation and a lengthy mediation, Plaintiffs reached a settlement with six defendants that was subsequently approved by the District Court in Fresco I. However, two of the underlying defendants did not agree to the Fresco I settlement. Consequently, the District Court severed Plaintiffs' claims against those defendants, and a second case was opened, styled as *Fresco, et al. v. R. L. Polk & Co. and Acxiom Corp.* ("Fresco II"). The parties litigated for two more years before finally reaching a settlement agreement. As a result of the class action settlements obtained in Fresco I and Fresco II, an entire industry of data aggregators agreed to a ten (10) year comprehensive program to change their corporate culture in dealing with privacy rights issues and compliance with the DPPA. Through the sweeping injunctive relief obtained, the two settlements provide important privacy protections and safeguards to the entire class of more than 200 million licensed drivers.

Throughout the settlement approval process, the settlement received overwhelming support from the class members and privacy experts. Notably, not one of the fifty (50) state attorney generals objected after receiving notice of the settlement. The only objections came from professional objectors bringing forth boilerplate, conclusory objections that were unsupported and wholly meritless. These few professional objectors made up but a tiny fraction of the total class size. To no one's surprise, the Fresco II appellants happen to be, with a few exceptions, the same professional objectors who sought to derail the settlement agreement in Fresco I by the filing of baseless, frivolous interlocutory and final appeals. This same group of Objectors/Appellants includes the Corea Objectors, the Pentz Objectors, one of the Weinstein

Objectors,[4] and one of the Siegel Objectors.[5]  As the Court may recall, each objection in Fresco I was reviewed carefully by this Court and the arguments made by counsel for the Objectors/Appellants were roundly rejected each time.  Ultimately, these objectors appealed in Fresco I, only to withdraw their appeals with the Fresco I settlement unchanged.[6]  The same result is sure to follow here in Fresco II.

Professional objectors employ a practice of filing frivolous objections and appeals of class action settlements in a deliberate attempt to "tax" or extort money from class counsel, usually in exchange for the withdrawal of these utterly baseless and obstructive filings.  The *modus operandi* of these attorneys is to file boilerplate objections, wait for the court to overrule them, file a notice of appeal and then use the threat of the associated costs and delay to distribution of the class settlement to shake-down the parties for money to cease their efforts.  The same tactics have been followed in the instant case, with the same attorneys filing meritless objections and appeals following the resolution of the Fresco I class action, and now appealing the final judgment in Fresco II after having withdrawn their appeals in Fresco I with the settlement unaltered.

---

[4] D.J. Powers did not object to Fresco I.

[5] Marvin Union did not object to Fresco I.

[6] Strong consideration should be given to the fact that, given that Objectors/Appellants Pentz, Weinstein, Siegel, and Corea decision to withdraw their objections/appeals without affecting the Fresco I settlement, their attempts to appeal the second Fresco settlement is barred by the doctrine of *res judicata*.  As the court is well-aware, the only meaningful difference between the Fresco I and Fresco II settlements is the identity of the defendants. Plaintiffs/Appellees urge the Court to consider that the objectors/appellants waived their right to appeal the Fresco II settlement by voluntarily withdrawing their previous appeals with the Fresco I settlement unchanged and approved by this Court.  "Under res judicata, a final judgment on the merits bars further claims by parties or their privies on the same cause of action."  *U.S. v. Mendoza,* 464 U.S. 154, 159 (1984) (citing *Montana v. United States,* 440 U.S. 147, 153 (1979).  "Res judicata applies not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact." *Horne v. P*otter, 2010 WL 3245149, at *2 (11th Cir. August 16, 2010) (citing *Manning v. City of Auburn,* 953 F.2d 1355, 1358-59 (11th Cir. 1992)). *See also Allen v. McCurry*, 449 U.S. 90, 94 (1980) (the doctrine of res judicata serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication").

4

The tactics of these attorneys have been well-documented by courts across the United States, including decisions from the Eleventh Circuit, which have denounced the same sort of conduct employed by the appellants/objectors here.  *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1379 (S.D. Fla. 2007) (Judge Seitz, in responding to objections and appeals filed by professional objector Siegel, among others, commented that she "did not find any of the papers filed by Objectors' Counsel to be particularly helpful or to have conferred a benefit on the Class, as they were generic compilations of well-known case law and lacked specific application to this case.  In short, they appeared to be standard form arguments filed in other cases."); *see also In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 2010 WL 786513, at *1-3 (D. Nev. Mar. 8, 2010)  (objectors, including Pentz and Siegel, ordered to post $500,000 appeal bond, joint and severally, for filing "frivolous" objections that would "almost certainly be rejected by the 9th Circuit"); *Oulette v. Wal-Mart,* Case No. 67-01-CA-326 (Cir. Ct. of Wash. Cty. Fla 2009) (regarding objectors, including Pentz and Weinstein: "The Court finds that a lack of involvement and participation of the attorneys that were present combined with their attempt to inject themselves at the last minute into this eight year litigation constitutes an effort to extort money from the class and/or class counsel."); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 170-75 (3d Cir. 2006) (appeals filed by objectors "were without merit and failed to improve the Class's recovery in any manner," instead having "resulted in wasteful litigation and delayed the distribution of funds to the Class"); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 251 (D.N.J. 2005) (overruling objection to class action settlement and finding "no merit" to the objectors' arguments); *Fielder v. Credit Acceptance Corp.*, No. CV96-24285 (16th Cir. Div. 1 Mo. Sept. 6, 2007) (court declared that it "[did] not intend to allow this class action litigation,

5

which affects the rights of over 14,000 class members, to be derailed by uninformed or careless counsel who attempt to intervene at the eleventh hour").

A particularly stirring rebuke of the methods of these professional objectors was made by district court Judge James Rosenbaum in 2009, who offered the following admonition when confronted with a request for attorneys' fees by several professional objectors, including Siegel, in Minnesota class action litigation:

> The remoras are loose again.  The Court has received a motion from attorneys Edward Siegel, Edward Cochran, Stuart Yoes, and Scott Browne (styling themselves "Objectors' Counsel"), seeking an award of fees.   Their motion is emphatically denied…[Objectors' Counsel's] suggestion is laughable.  If the Court may be permitted an egregious paraphrase of Winston S. Churchill: Seldom in the field of securities litigation was so little owed by so many to so few.  Objectors' Counsel 'make outlandish fee requests in return for doing virtually nothing.'   (citation omitted).  And nothing is the quantity of assistance they have provided to the Court and the class.  Their goal was, and is, to hijack as many dollars for themselves as they can wrest from a negotiated settlement.  Objectors' eight-page-long, two-week-late pleading presented no facts, offered no law, and raised no argument upon which the Court relied in its deliberation or ruling concerning class counsel's motion for fees…Objectors' request and their motion ill-befit attorneys admitted to the bar.

*In re UnitedHealth Group PSLRA Litig.*, 643 F. Supp. 2d 1107, 1108-09 (D. Minn. 2009).

Professional objectors Pentz, Siegel, and Weinstein have been branded as "serial" objectors. *See In re Initial Public Offering Securities Litigation*, 2010 WL 2884794, at *2 (S.D.N.Y. July 20, 2010) (Pentz, Weinstein, and Siegel labeled "serial objectors"); *In re Wal-Mart Wage and Hour Emp't,* 2010 WL 786513 at *1 ("Objectors' counsel have a documented history of filing notices of appeal from orders approving other class action settlements…"); *Barnes v. FleetBoston Financial Corp.,* 01-10395, 2006 U.S. Dist. LEXIS 71072 (D. Mass. Aug. 22, 2006) (Pentz called a professional objector); *In re Royal Ahold N.V. Securities & ERISA*

*Litigation,* 461 F. Supp. 2d 383, 386 (D. Md. 2006) (Pentz identified as a "professional and generally unsuccessful objector").  As recently as March 2010, Pentz and Siegel were required to collectively post appeal bonds in the amount of $1 million due to their "documented history of filing notices of appeal from orders approving other class settlements, and thereafter dismissing said appeals when they and their clients were compensated by the settling class or counsel for the settling class."  *In re Wal-Mart Wage and Hour Emp't*, 2010 WL 786513 at *1.  However, neither attorney posted the bond and nonetheless proceeded with their appeals, which resulted in a stinging admonishment by the district court and sanctions of $10,000 against each attorney. *See* May 25, 2010 Order of District Judge Philip M. Pro from the U.S. District Court, District of Nevada, attached hereto as Exhibit 1.

As courts routinely find with professional objectors, a Rule 7 bond is an appropriate vehicle to help offset some of the effects of the costly and significant delays these baseless appeals cause in the distribution of a class action settlement.  *See, e.g., Turner v. General Elec. Co.*, No. 06 Civ. 186, Slip Op. at 2 (M.D. Fla. Oct. 12, 2006) (ordering professional objector Weinstein to post a bond after Weinstein "stated that he would withdraw his objection if Class Counsel made a donation to a charity he selected"); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 2003 WL 22417252, at *3 (D. Me. Oct. 7, 2003) (district court judge required Pentz to post a bond because the appeal "might be frivolous," and because imposition of sanctions on appeal was "a real probability").

### B. Plaintiffs/Appellees easily meet the standard for requiring imposition of a Rule 7 appeal bond.

Pursuant to Rule 7, Fed. R. App. P., "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal."  The purpose of Rule 7 is to protect an appellee against the risk of

nonpayment of an appellee's costs by an unsuccessful appellant.  *See Adsani v. Miller*, 139 F.3d 67, 70 (2d Cir. 1998) *accord Pedraza v. United Guaranty Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002).  It is within the district court's discretion to determine the amount and nature of the bond. *Adsani*, 139 F.3d at 71; *Pedraza*, 313 F.3d at 1328; *see also* Fed. R. App. P. 7 Advisory Committee's Note, 1979 Amendment.  In deciding whether to impose a Rule 7 bond, courts typically consider the following factors: (1) the appellant's financial ability to post a bond; (2) the risk that the appellant would not pay appellee's costs if the appeal is unsuccessful; (3) the merits of the appeal; and (4) whether the appellant has shown any bad faith or vexatious conduct. *See, e.g., Baker v. Urban Outfitters, Inc.*, 2006 WL 3635392, at *1 (S.D.N.Y. Dec. 12, 2006) (citations omitted).

Where an appeal is taken in bad faith (or where, as here, an underlying fee-shifting statute provides for an award of "costs" defining "attorneys' fees" as "costs"), a district court may also exercise its discretion to impose a bond that includes an amount for attorneys' fees likely to be incurred on appeal.  *Pedraza,* 313 F.3d at 1333; *Young v. New Proces Steel, LP*, 419 F.3d 1201, 1202-03 (11th Cir. 2005); *Azizian v. Federated Dep't Stores, Inc.*, 499 F. 3d 950, 959-60 (9th Cir. 2007).  Here, the appeals filed by the professional "serial" Objectors/Appellants have been taken for an improper purpose.  The same Objectors/Appellants previously objected and appealed Fresco I, asserting boilerplate, unsupported arguments, only to withdraw their appeals with the settlement completely unchanged.   As discussed below, these professional Objectors/Appellants have a track record of this type of conduct, and their motivation serves not to effect any change in the negotiated class settlement, but to only obstruct the implementation of this class settlement with hopes that they might extract a payout in exchange for dropping these

appeals.  An appeal bond is necessary to discourage this perversion of the law perpetrated by these professional Objectors/Appellants.

Moreover, an appeal bond may also be imposed to cover attorneys' fees likely to be incurred on appeal where there is a fee-shifting provision in the statute or law which attends the underlying action.  *Pedraza*, 313 F.3d at 1333 (also holding that Rule 7 furthers the additional purpose underlying fee shifting statutes of protecting parties from the burdens of defending frivolous appeals, as "an appellant is less likely to bring a frivolous appeal if he is required to post a sizable bond for anticipated attorneys' fees prior to filing the appeal").  Here, the statute attending the underlying cause of action in this matter, 18 USC § 2724(b)(3), contains a fee shifting provision, stating that "[t]he court may award…reasonable *attorneys' fees* and other *litigation costs* reasonably incurred" (emphasis added).  This provision further bolsters Plaintiffs/Appellees' request for this Court to order the Objectors/Appellants and their attorneys to post a bond, inclusive of attorneys' fees associated with defending these frivolous appeals in compliance with Rule 7.

### i.      The financial ability of the Objectors/Appellants and/or their attorneys is evident and not in doubt.

The goal of professional objectors Pentz, Weinstein, and Siegel by the filing of these appeals is obvious.  *See, e.g., In re Initial Public Offering*, 2010 WL 2884794 at *2; *In re Wal-Mart Wage and Hour Emp't,* 2010 WL 786513 at *1.  As succinctly stated by federal district court Judge Nancy Gertner:

> Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. The larger the settlement, the more cost effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal). Because of these economic realities, professional objectors can levy what is effectively a tax on class action settlements, a tax

9

> which has no benefit to anyone other than to the objectors.
> Literally nothing is gained from the cost: Settlements are not
> restructured and the class, on whose behalf the appeal is
> purportedly raised, gains nothing."

*Barnes,* 01-10395, 2006 U.S. Dist. LEXIS 71072 (D. Mass. Aug. 22, 2006).  In that regard,

Pentz, Weinstein, and Siegel have forged infamous reputations based on their ability to extract

monies from class action settlements.  *See, e.g., Park v. Thomson Corp.*, 633 F. Supp. 2d 8

(S.D.N.Y. 2009); Brendan Kearney, *The Deal Breakers: A look at professional class action

objectors in Maryland*, www. mddailyrecord.com, May 23, 2010 (available at:

http://mddailyrecord.com/2010/05/23/the-deal-breakers-a-look-at-professional-class-action-

objectors/); Rebecca Meiser, *Edward Siegel is on a quest to either stop exorbitant lawyer

payouts – or score some easy money*, www. clevescene.com, June 4, 2008 (available at:

http://www.clevescene.com/cleveland/edward-siegel-is-on-a-quest-to-either-stop-exorbitant-

lawyer-payouts-151-or-score-some-easy-money/Content?oid=1506021); Dan Levine, *Class

Action Objectors on the Defensive,* www.law.com, June 21, 2010 (available at:  http://www.law.

com/jsp/article.jsp?id=1202462870121).[7]

Clearly, the objectors and their counsel have the financial wherewithal to post a Rule 7

appeal bond.  *See, e.g.,* the Affidavit of class counsel Robert J. Bonsignore in the *Wal-Mart

Wage & Hour Emp't Practices Litig.* matter, attached hereto as Exhibit 2, in which he avers that

"Upon information and belief and opinion, as a Professional Objector, Pentz has received

payments exceeding $100,000 simply to drop objections and in exchange brought no additional

benefit to the class whatsoever."  Moreover, the failure of the Objectors/Appellants to present

---

[7] While Corea is not the usual professional objector, since he generally litigates as a class counsel, he has exhibited a willingness to employ the tactics of his professional objector counterparts.  Corea, by his own admission, runs a successful law practice which boasts on his firm's website, http://corealaw.com, of having "recent recoveries" in excess of $37 million.

evidence demonstrating that they *lack* the financial ability to post a bond creates a presumption that they have the ability to do so.[8]  *Adsani*, 139 F.3d at 79.  These factors weigh heavily in favor of requiring the Objectors/Appellants to post Rule 7 appeal bond.[9]  *See also Fleury v. Richemont N. Am.*, 2008 WL 4680033, at *7 (N.D. Cal. Oct. 21, 2008) (citation omitted) (imposing a bond where "there is no indication that plaintiff is financially unable to post bond"); *In re Pharm. Ind. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274, 279 (D. Mass. 2007) (imposing a bond where "[t]here is no evidence that a bond would pose an undue hardship on the objector").

> **ii.     There is a substantial risk that the Objectors/Appellants will not pay the appellate costs when they lose their appeals.**

There is a substantial risk that the Objectors/Appellants will not pay the Plaintiffs/Appellees' costs when the appellants lose their appeal.  Where the appellants are dispersed across the country, as they are in this matter, Class Counsel would be required to institute multiple collection proceedings in numerous jurisdictions to recover their costs.  The likelihood of the Objectors/Appellants' refusal to pay for Plaintiffs/Appellees' costs for defending this latest salvo of frivolous appeals is a crucial factor for the Court to consider when weighing the necessity of a Rule 7 appeal bond.  *In re Initial Public Offering*, 2010 WL 2884794 at *2 (*citing In re Currency Conversion Fee Antitrust Litig.*, 2010 WL 1253741, at *3 (S.D.N.Y. Mar. 5, 2010).  The Objectors/Appellants and their attorneys reside in four different states and jurisdictions: the Pentz Objectors reside in Florida; the multiple Corea Objectors and Weinstein

---

[8] Moreover, Weinstein's website, http://www.longhornlawyer.com/, claims of his achieving the largest automobile injury verdict in Texas in 2002 and of multiple appearances on CourtTV.

[9] Should the Court require additional evidence concerning the financial resources of the Objectors/Appellants, Plaintiffs/Appellees request leave to take discovery from the Objectors/Appellants *and their counsel*.

Objectors reside in Texas; the Siegel Objectors reside in Ohio; and Pentz personally resides in Massachusetts.

Furthermore, the Court should consider the recent documented history of Weinstein, Siegel, and Pentz of ignoring court orders to post appeal bonds and pay sanctions.  As recently as March 8, 2010, professional objectors Siegel and Pentz filed objections to a class action settlement and were each ordered to post an appeal bond of $500,000.  *In re Wal-Mart Wage and Hour Emp't,* 2010 WL 786513 at *1-2.  Both Siegel and Pentz appealed the court's order requiring them to file appeal bonds, and thereafter proceeded with their appeals anyway, ultimately demanding $800,000 as ransom in exchange for dropping their appeals.  *See* Exhibit 1.  As a result of the attorneys' failure to abide by the Court's order, Siegel and Pentz were sanctioned $10,000 each.  In addition, Weinstein, along with Siegel and Pentz, have yet to post the $25,000 appeal bonds they recently were ordered to make by Judge Scheindlin in an objection/appeal they brought in a recently settled class action in the Southern District of New York.  *See* July 6, 2010 Order of District Judge Shira A. Scheindlin from the U.S. District Court, Southern District of New York, attached hereto as Exhibit 3.

Finally, it bears consideration that the lawyers representing the Ojectors/Appellants do not have a reputation as upstanding members of the bar, but rather "remoras" whose "frivolous" and "vexatious" actions "ill-befit attorneys admitted to the bar."  *In re UnitedHealth Group*, 643 F. Supp. 2d at 1108-09 (referring to objectors which included Siegel as "remoras"); *In re Wal-Mart Wage and Hour Emp't,* 2010 WL 786513 at *1 (objectors, including Pentz and Siegel, filed "frivolous" objections); *In re Initial Public Offering*, 2010 WL 2884794 at *2 (referring to Pentz, Weinstein, and Siegel as engaging in "bad faith" and "vexatious" conduct).  Given their documented and widely known unscrupulous conduct, there is a strong likelihood that counsel

for the Objectors/Appellants will fight to avoid collection efforts.  This factor also strongly supports this motion to require the Objectors/Appellants to post a substantial Rule 7 appeal bond, inclusive of attorneys' fees in this matter.

### iii.    The Objector/Appellants' appeals lack merit.

The third issue for the Court's consideration with regard to ordering a Rule 7 appeal bond addresses the merits of the Objectors/Appellants' appeal.  In determining whether to set a bond, a court should take into account the likelihood that the objectors' appeal will be unsuccessful.  *See, e.g., Pedraza*, 313 at 1333-36; *Adsani*, 139 F.3d at 79 (affirming the district court's imposition of an appeal bond after "look[ing] to the merits of the appeal itself" and determining that appellant's case was found to be "objectively unreasonable"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 129 (S.D.N.Y. 1999) (class member who filed notice of appeal from settlement required to post an appeal bond because the court found the appellant's position "objectively unreasonable"); *In re Compact Disc*, 2003 WL 22417252, at *3 (considering whether appeal "might be frivolous" is valid consideration when deciding whether to impose a bond).

It is well-established that a settlement approved by the district court will only be reviewed under an abuse of discretion standard.  *See In re HealthSouth Corp. Securities Litg'n*, 334 Fed.Appx. 248, 252 (11th Cir. 2009).   Where a class settlement is preliminarily approved, it is "'presumptively reasonable' and an objector … must overcome a 'heavy burden' to prove the settlement is unreasonable."  *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 466 (S.D. Fla. 2002) (quoting *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)).

In the instant case, the Objectors/Appellants previously objected and appealed the settlement of Fresco I, only to withdraw their appeals with the settlement completely unchanged.

13

The objections made by each of them in Fresco I were boilerplate, conclusory arguments which were wholly unsupported and, each time, found to be meritless.  Now, with a few exceptions, the same cast of characters has appeared to assert the baseless objections that have failed before, in this case and in others.  *See, e.g., In re Royal Ahold N.V.,* 461 F. Supp. 2d at 386 ("Pentz is a professional and generally unsuccessful objector" whose objection was "not well reasoned and was not helpful"); *In re UnitedHealth Group*, 643 F. Supp. 2d at 1108-09 (objectors, including Siegel, "conferred no benefit whatsoever on the class or on the Court"); *Oulette,* Case No. 67-01-CA-326 (Cir. Ct. of Wash. Cty. Fla 2009) (the objections filed by Pentz, among others, "were all general boilerplate objections prepared and filed by a group of attorneys … for their own personal benefit and not for the benefit of this class or their clients"); *In re AOL Time Warner ERISA Litig.*, No. 02 Civ. 8853, 2007 WL 4225486, at *3 (S.D.N.Y. Nov. 28, 2007) (calling Pentz's and another attorney's arguments "counterproductive" and "irrelevant or simply incorrect").  It is important to reiterate that none of the professional "serial" objectors thought enough of their appeals to pursue them in Fresco I.  As such, the Court should take into account the history of repeated maneuverings and failures by the Objectors/Appellants to obstruct the final implementation of this, and numerous other class actions, in which they have filed virtually the same frivolous objections.[10]  *See Fleury*, 2008 WL 4680033, at *6 (finding the merits of the appeal "informs the likelihood that the appellant will lose and thus be liable for costs").

### iv.   Bad faith and vexatious conduct has been demonstrated by the Objectors/ Appellants.

Finally, the lawyers behind the Pentz, Weinstein, and Siegel objections have a documented history of bad faith and vexatious conduct in making the same kinds of class action

---

[10] Corea, who does not yet have the documented history of filing meritless objections and appeals like his counterparts Pentz, Siegel, and Weinstein, has taken an unmistakably meritless appeal in this instance.  For further discussion, see II.B.iv, *infra*.

appeals and objections that have been brought forth in Fresco I and II.  As stated above, Weinstein, Siegel, and Pentz were recently required to post a Rule 7 appeal bond due to recognized "bad faith" and "vexatious" conduct in *In re Initial Public Offering*, 2010 WL 2884794 at *2.  Furthermore, it bears mentioning that the district court recognized that these professional objectors "undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients."  *Id.*  at *3. For example, a search of PACER reveals that Falkner alone objected to almost eighty (80) class action settlement in the last two (2) years.  Consider also that courts in various jurisdictions across the country have reserved only the most eloquently vociferous and justifiably unrestrained criticism for these objectors and the tactics they employ, branding them "hijackers" and "remoras," *In re UnitedHealth Group*, 643 F. Supp. 2d at 1108-09, "extortionists," *Oulette,* Case No. 67-01-CA-326 (Cir. Ct. of Wash. Cty. Fla 2009), and "hold-up artists," *In re Charles Schwab Securities Litig.*, Case No. 08-01510 (N.D. Cal. 2010).

Indeed, there should be no mystery as to the motivations of these professional serial Objectors/Appellants.  *See, e.g., In re AOL Time Warner*, 2007 WL 4225486, at *3 (district court calls Pentz's arguments "counterproductive" and "irrelevant or simply incorrect" so that they "clouded rather than sharpened the issues").  In that regard, the Court should give strong consideration to actions of professional objector Weinstein in the *Turner v. G.E.* matter, in which Weinstein attempted to swindle a $125,000 payment in exchange for dropping his objection to a negotiated settlement.  In a declaration attached hereto, class counsel for *Turner* recites, in lurid detail, the following account of outright extortion by Weinstein:

> That afternoon, I left a voicemail on Jeffrey Weinstein's cell phone.  He returned the call soon thereafter.  I reiterated that I did not understand his comment that we could resolve his objection, in light of GE's position that the Settlement Agreement would not be

> modified.  Mr. Jeffrey Weinstein responded that he "could always withdraw his objection."  I told him I was delighted he was willing to do so, but Jeffrey Weinstein then told me that he would drop the objection only if he was compensated.  I reminded him that the Federal Rules of Civil Procedure prohibit undisclosed agreements in class actions.  In response, he told me we can "work around the rules" if Settlement Class Counsel agreed to make a $125,000 contribution to a charity of Mr. Jeffrey Weinstein's choosing.  He named a specific charity to which he claimed a connection, and told me that his relationship with the charity was such that he would be able to share in the proceeds of the "contribution."  Jeffrey Weinstein noted that time was of the essence as the matter of his objection was under advisement by the Court.

*See* Declaration of Scott Wm. Weinstein, ¶ 8, attached hereto as Exhibit 4.

While Corea does not yet have the documented track record of his counterparts, he is undoubtedly following their playbook in the filing of these frivolous objections and appeals.  By way of background, Corea originally sought to intervene claiming that the Fresco litigation interfered with lawsuits he filed in Texas against Acxiom and other companies.[11]  Corea further argued that he could achieve a better remedy for the class of Texans he sought to represent.  However, Corea's lawsuits against Acxiom were dismissed at the district court level for failure to state a claim and for lack of standing.  The Fifth Circuit affirmed the dismissal, and Corea has not sought review from the United Stated Supreme Court.[12]  As such, Corea's dispute with Acxiom is over; his putative class received nothing for his efforts.  Ironically, he is now here appealing a settlement that actually provides his clients with the important privacy benefits he could not obtain for them.  It is clear that although he may have once had an argument to intervene while his cases were pending, that argument has been extinguished by the Fifth Circuit.  As a result, Corea's only remaining strategy is to interfere with the settlement in this case to extort money to compensate himself for his unsuccessful labor in Texas.

---

[11] *See* Fresco I, D.E. 415.

[12] *See* Fifth Circuit opinion dated July 14, 2010, attached hereto as Exhibit 5.

Let there be no illusions as to the legitimacy of the Objectors/Appellants' actions in this matter. They bring forth illegitimate, unmeritorious arguments of no benefit whatsoever to the class, arising solely out of their own selfish desires to extract a few quick bucks from the settlement. The latest appeals are as unsubstantiated as their previous attempts to block the resolution of many other class actions, and clearly meet and even exceed the very definition of bad faith and vexatious conduct. Certainly, the behavior of these attorneys warrants the imposition of the severest f sanctions, the least of which is the imposition of a meaningful Rule 7 appeal bond in this case.

v.      <b>Public policy compels that a bond be ordered.</b>

Finally, in addition to satisfying the above criteria, "there are public policy reasons to prevent frivolous objectors from threatening to hold up class distributions." *In re Pharm. Ind.* 520 F. Supp. 2d at 279 (noting that the class members would likely be damaged by the failed appeal). In *Allapattah Servs., Inc. v. Exxon Corp.*, 2006 WL 1132371, at *1 (S.D. Fla. Apr. 7, 2006), when the district court entered final approval of a class action settlement, it cautioned that any professional objector planning to pursue an appeal of the settlement would be required to post a bond in the amount of $13,500,000 because of the damage such an appeal would inflict on the class:

> I make this conclusion because any appeal of this Order as to the entire class stays both the entry of final judgment on all claims in the Claims Administration Process and payment to all Class members. Accordingly, the highly detrimental impact of an appeal of the settlement agreement as to the entire class renders it appropriate for the Court to require [the objector] to post an appeal bond pursuant to Federal Rule of Appellate Procedure 7.

*Id.* at *18. Similarly, the Objectors/Appellants' actions here are brought solely out of the self-interested desire to extort money from the negotiated class settlement, and impede the substantial

relief that will benefit the hundreds of millions of class members and the general public at large. These unscrupulous and dilatory tactics should not be condoned. At a minimum, the imposition of a Rule 7 appeal bond is necessary to protect the interests of Appellees and the class as a whole, and to further discourage this type of future behavior by the Objectors/Appellants.

### C.  The Court should require a bond in the amount of $300,000 to be posted by the Objectors/Appellants and their attorneys.

Plaintiffs/Appellees request that the Court order the Objectors/Appellants – and their counsel – to post a bond in the amount of $300,000, consisting of a "true cost" component of $25,000 and a fee component of $275,000.

### i.  Costs of $25,000 are reasonable and appropriate.

Courts routinely apply $25,000 as the minimum benchmark amount of costs for appeals to class action settlements. *See, e.g.*, *In re Initial Public Offering*, 2010 WL 2884794, at *5 (assessing $25,000 in costs on settlement objectors pursuant to Fed. R. App. P. 7); *In re Ins. Brokerage Antitrust Litig.*, 2007 WL 1963063, at *3-5 (D.N.J. July 2, 2007) (imposing a "reasonable" $25,000 appeal bond for objectors to class settlement based on line of precedent); *In re Compact Disc*, 2003 WL 22417252, at *2 ($35,000 appeal bond required for costs); *In re Currency Conversion Fee*, 2010 U.S. Dist. LEXIS 27605, at *9 ($50,000 appeal bond).    Rule 7 does not require plaintiffs to make any "showing of costs for a bond motion." *In re Ins. Brokerage*, 2007 WL 1963063, at *3.

Here, since there are four separate objector appeals and a record on appeal to be amassed, an appeal bond of $25,000 to cover pure costs of litigation is reasonable.    However, Plaintiffs/Appellees reserve the right to request additional costs at a later time, if warranted. Such a request is allowable and within the Court's discretion. *See, e.g., In re Ins. Brokerage*, 2007 WL 1963063, at *3 ("In addition to the printing and administrative costs associated with an

appeal … it is possible that the Plaintiffs will face different issues from different appellants, which may increase the expenses."); *In re Diet Drugs*, 2001 WL 34133966, at *1 (E.D. Pa. Apr. 6, 2001) (requiring an additional $43,000 bond to be posted by objectors appealing settlement approval).

> ii.    **The Rule 7 appeal bond should include    attorneys'
>        fees for responding to the    appeals.**

In addition, the Rule 7 appeal bond should include $275,000 to cover attorneys' fees in litigating the appeal, which is reasonable in light of the efforts that will be undertaken to respond to the appeals. *See* Declaration of Joel S. Perwin, ¶ 8, attached hereto as Exhibit 6.  In addition to pure litigation expenses, courts have discretion to impose appeal bonds to prevent frivolous, unreasonable, or groundless litigation, or where there is an underlying fee-shifting provision. *See, e.g., Young*, 419 F.3d at 1202-03 (groundless litigation); *Pedraza*, 313 F.3d at 1333-36 (fee shifting statute).   As discussed herein, these appeals are the classically canned, groundless appeals filed by professional "serial" objectors who have a collective history of these abusive practices (or, in Corea's case, are patterning their conduct after these abusive practices).  This is precisely the situation where appellate attorneys' fees are warranted.  *Downey v. Mortg. Guar. Ins. Corp.*, 313 F.3d 1341, 1342-44 (11th Cir. 2002); *Pedraza*, 313 F.3d at 1331-32; *Adsani*, 139 F.3d at 74-75; *NASDAQ*, 187 F.R.D. at 128; *In re Compact Disc*, 2003 WL 22417252, at *1; *In re Broadcom Corp. Sec. Litig.*, slip op. at 8-11 (C.D. Cal. Dec. 5, 2005).

Moreover, the underlying cause of action was brought under the provisions of the DPPA, and specifically 18 USC § 2724(b)(3), which contains the following fee-shifting provision that includes anticipated attorneys' fees as included within the definition of costs:  "The court may award…reasonable attorneys' fees and other litigation costs reasonably incurred."  Therefore, a bond should be required to cover Plaintiffs/Appellees' attorneys' fees on appeal.  *Pedraza*, 313

F.3d at 1333-33 ("[T]he meaning of 'costs,' as used in Rule 7, should be derived from the definition of costs contained in the statutory fee shifting provision that attends the plaintiff's underlying cause of action."); *Downey*, 313 F.3d at 1342 ("[A] cost bond issued pursuant to Fed. R. App. P. 7 … may properly include anticipated attorneys' fees if the statutory fee shifting provision that attends the plaintiff's underlying cause of action defines 'costs' to include such fees."). The DPPA expressly defines "attorneys' fees" as "costs." 18 USC § 2724(b)(3). Accordingly, a bond in the amount of $300,000, inclusive of $275,000 in attorneys' fees, is warranted under the statutory fee-shifting provision that attended Plaintiffs/Appellees' cause of action and should be required to be posted by the Objectors/Appellants and their attorneys.

III.   **CONCLUSION**

The actions by the Objectors/Appellants are driven by no other motivation than greed and the callous, indifferent obstruction of the court-ordered implementation of this class action settlement that has been seven (7) years in the making, at substantial expense and prejudice to the class. The requirement of a meaningful Rule 7 appeal bond in this matter is absolutely necessary to deter the continued scandalous conduct of these professional "serial" objectors – these "remoras" – and would be in furtherance of the very important purpose underlying Rule 7. Therefore, the imposition of a $300,000 appeal bond, jointly and severally upon each Objector/Appellant, should be ordered.

<u>Certification of Compliance with Local Rule 7.1(A)(3)</u>

In compliance with Rule 7.1(A)(3) of the Local Rules of the United States District Court for the Southern District of Florida, undersigned counsel hereby certifies that counsel for Plaintiffs have conferred with counsel for Defendants in a good faith effort to obtain agreement on the relief sought and Defendants do not object to the relief sought in this motion.

Additionally, Plaintiffs/Appellees have conferred with all Objectors/Appellants, who all oppose the relief sought herein

DATED:  September 1, 2010.

Respectfully submitted,

_/s/ Tod Aronovitz_
Tod Aronovitz, Esq.
L. Elijah Stiers, Esq.
(as Co-Lead Class Counsel for Plaintiffs)
ARONOVITZ LAW
777 Brickell Avenue, Suite 850
Miami, Florida 33131

and

John A. Yanchunis, Esq.
(as Co-Lead Class Counsel for Plaintiffs)
JAMES, HOYER, NEWCOMER, SMILJANICH &
YANCHUNIS, P.A.
4830 West Kennedy Boulevard, Suite 550
Tampa, Florida 33609

and

David D. Welch, Esq.
DAVID D. WELCH LAW OFFICES
2211 East Sample Road, Suite 203
Lighthouse Point Professional Building
Lighthouse Point, FL 33064

and

Joel S. Perwin, Esq.
JOEL S. PERWIN, P.A.
Alfred I. DuPont Building, Suite 1422
169 E. Flagler Street
Miami, FL  33131

and

Peter A. Portley, Esq.
PORTLEY AND SULLIVAN
2211 E. Sample Road
Lighthouse Point, FL  33064

and

Lawrence D. Goodman, Esq.
Devine Goodman Rasco & Wells, P.A.
777 Brickell Avenue, Suite 850
Miami, FL  33131

and

James K. Green, Esq.
James K. Green, P.A.
Suite 1650, Esperantè
222 Lakeview Avenue
West Palm Beach, FL  33401

and

Jack Scarola, Esq.
Searcy Denney Scarola Barnhart &
Shipley, P.A.
2139 Palm Beach Lakes Boulevard
Post Office Drawer 3626
West Palm Beach, Florida  33402

**Attorneys for Named Plaintiffs**

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2010, I electronically filed the above and foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or by U.S. mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.



                        */s/ Tod Aronovitz* _____

**SERVICE LIST**
**Fresco vs. R L Polk & Co. and Acxiom Corp.**
**Case No. 07-60695 Civ-Martinez/Brown**

**ATTORNEYS FOR PLAINTIFFS:**

Tod Aronovitz
ta@aronovitzlaw.com
**L. Elijah Stiers**
es@aronovitzlaw.com
**ARONOVITZ LAW**
777 Brickell Avenue, Suite 850
Miami, FL 33131
305-372-2772 Telephone
305-397-1886 Facsimile

**John A. Yanchunis**
jyanchunis@jameshoyer.com
**JAMES HOYER NEWCOMER**
**SMILJANICH & YANCHUNIS, P.A.**
One Urban Center, Suite 550
4830 West Kennedy Boulevard
Tampa, Florida 33609
813-286-4100 Telephone
813-286-4174 Facsimile

**David D. Welch**
ddw@123@bellsouth.net
**DAVID D. WELCH LAW OFFICES**
2211 East Sample Road, Suite 203
Lighthouse Point Professional Building
Lighthouse Point, Florida 33064
954-943-2020 Telephone
954-782-1552 Facsimile

**Joel S. Perwin**
jperwin@perwinlaw.com
**JOEL S. PERWIN, P.A.**
169 E. Flagler Street
Alfred I. DuPont Building, Suite 1422
Miami, Florida 33131
305-779-6090 Telephone
305-779-6095 Facsimile

**Peter A. Portley**
pportley@portleysullivan.com
**PORTLEY AND SULLIVAN**
Lighthouse Point Professional Building
2211 E. Sample Road, Suite 204
Lighthouse Point, Florida 33064
954-781-7600 Telephone
954-941-3469 Facsimile

**Lawrence D. Goodman**
lgoodman@devinegoodman.com
**DEVINE GOODMAN  RASCO & WELLS, P.A.**
777 Brickell Avenue, Suite 850
Miami, Florida 33131
305-374-8200 Telephone
305-374-8208 Facsimile

**James K. Green**
jameskgreen@bellsouth.net
**JAMES K. GREEN, P.A.**
Suite 1650, Esperante´
222 Lakeview Avenue
West Palm Beach, Florida 33401
561-659-2029 Telephone
561-655-1357 Facsimile

**Jack Scarola**
jsx@searcylaw.com
**David J. Sales**
djs@searcylaw.com
**SEARCY DENNEY SCAROLA**
**BARNHART & SHIPLEY, P.A.**
2139 Palm Beach Lakes Boulevard
P. O. Drawer 3626
West Palm Beach, Florida 33402
800-780-8607 Toll free
561-686-6300 Telephone
561-478-0754 Facsimile

24

**ATTORNEYS for DEFENDANT,**
**R.L. Polk & Co.**

Lewis F. Collins, Jr.
lcollins@butlerpappas.com
**Scott J. Frank**
sfrank@butlerpappas.com
**BUTLER PAPPAS WEIHMULLER**
**KATZ CRAIG LLP**
777 S. Harbour Island Boulevard
One Harbour Place, Suite 500
Tampa, Florida 33602
813-281-1900 Telephone
813-281-0900 Facsimile

*Of Counsel:*
**Christopher M. Mason**
(Admitted *Pro Hac Vice*)
cmason@nixonpeabody.com
**NIXON PEABODY, LLP**
437 Madison Avenue
New York, NY 10021
212-940-3017 Telephone
212-940-3111 Facsimile

**ATTORNEYS for DEFENDANT,**
**Acxiom Corporation**

**Barry R. Davidson**
bdavidson@hunton.com
**Juan C. Enjamio, Esq**.
jenjamio@hunton.com
**Gustavo J. Membiela, Esq.**
gmembiela@hunton.com
**HUNTON & WILLIAMS LLP**
Mellon Financial Center, Suite 2500
1111 Brickell Avenue
Miami, Florida 33131
305-810-2500 Telephone
305-810-2460 Facsimile

**ATTORNEYS for OBJECTORS/**
**APPELLANTS, Jacqueline Pio**
**and Anthony Pio**

John J. Pentz
clasaxn@earthlink.net
2 Clock Tower Place, Suite 260G
Maynard, MA 01754
978-461-1548 Telephone
707-276-2925 Facsimile

– and –

Nicolas J. Gutierrez, Jr.
ngutierrez@gzpartners.com
**GUTIERREZ & ZARRALUQUI, LLP**
283 Catalonia Avenue, Suite 200
Coral Gables, Florida 33134
305-397-2005 Telephone

**ATTORNEYS for OBJECTORS/**
**APPELLANTS, Sharon Taylor, James**
**Douglas Booker, Lowry Briley, Twilah**
**Brown, James D. Clary, Sharon A. Clary,**
**Alice M. Cooks, Arlando Cooks, Elizabeth**
**DeWitt, Kennety Gossip, Sr., Kennice**
**Gossip, Pamela Hensley, Robert Holliness,**
**Carolyn Latham Holub, Brandi Jewell,**
**Tracy Karp, David Lee Patterson, Ronnie**
**Phillips, James Roberts, Luz Ann Roberts,**
**Kimberly Dawn Underwood, Marilyn**
**Whitaker, William Troy Wilson, Janice**
**Cook, Edie Stewart, Charles Rice, Macy**
**Pettyjohn, Brenda Lowery, Blaine Swanson,**
**Cindy Swanson, Norma Wiles, Thomas**
**Wiles, Theresa Gibson, and Wanda Evitts**

Kathryn L.S. Griswold
Brett C. Powell
brett@powellappeals.com
**THE POWELL LAW FIRM**
18001 Old Cutler Road, Suite 525
Palmetto Bay, Florida 33157
305-232-0131 Telephone
305-232-1091 Facsimile

– and –

25

Thomas M. Corea
tcorea@corealaw.com
Jeremy R. Wilson
jeremy.wilsonlaw@gmail.com
**THE COREA FIRM PLLC**
Renaissance Tower
1201 Elm Street, Suite 4150
Dallas, Texas 75270
214-953-3900 Telephone
214-953-3901 Facsimile


**<u>OBJECTORS/APPELLANTS</u> (*Pro Se*):**

Jeffrey L. Weinstein
jeff@longhornlawyer.com
518 Tyler Street
Athens, TX 75751
903-677-5333 Telephone
903-677-3657 Facsimile

D.J. Powers
djpowers@swbell.net
301 Park Lane
Austin, TX 78704
512-444-1641 Telephone
512-444-2-56 Facsimile

Marvin L. Union
marvunion@yahoo.com
13530 Heath Road
Novelty, Ohio 44075
440-338-8185 Telephone

Robert Falkner
cigarmanraf@yahoo.com
20826 Almar Road
Shaker Heights, Ohio 44120
216-991-4589 Telephone